FILED

MAR 2 4 2009

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
           DEPUTY CLERK

### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LYNNE McCLURE, PATRICK McCLURE, and SHAWN McCLURE, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | CIVIL ACTION NO. SA-08-CA-112-FB |
| GREATER SAN ANTONIO TRANSPORTATION COMPANY d/b/a Yellow Checker Cab, and ABUBAKR HAMED, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER ACCEPTING FIRST REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are the [First] Report and Recommendation of the United States Magistrate Judge (docket no. 88) addressing plaintiffs' motion for partial summary judgment [sometimes referred to as the First Report and Recommendation], along with Defendant Greater San Antonio Transportation Company's Objections to Report and Recommendation of United States Magistrate Judge on Plaintiffs' Motion for Partial Summary Judgment (docket no. 98), and plaintiffs' response (docket no. 109) thereto. Defendant Abubakr Hamed filed on objections to the First Report and Recommendation of the United States Magistrate Judge.

Where no party has objected to a Magistrate Judge's Report and Recommendation, the Court need not conduct a de novo review of the Report and Recommendation. See 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings and recommendations to which objection is made."). In such cases, the Court need only review the Report and Recommendation and determine whether it is clearly erroneous or contrary

to law. United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir.), cert. denied, 492 U.S. 918 (1989). To this extent, the Court has reviewed the First Report and Recommendation as it applies to defendant Hamed, who filed no objections, and finds the report to be neither clearly erroneous nor contrary to law.

Any Report and Recommendation to which objection is made requires de novo review by the Court. Such a review means that the Court will examine the entire record, and will make an independent assessment of the law. The Court need not, however, conduct a de novo review when the objections are frivolous, conclusive, or general in nature. Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987). In this regard, the Court has thoroughly analyzed the submissions in light of the entire record. As required by Title 28 U.S.C. § 636(b)(1)(c), the Court has conducted an independent review of the entire record in this cause and has conducted a de novo review with respect to those matters raised by GSTC's objections. After due consideration, the Court concludes the objections lack merit.

PROCEDURAL HISTORY

As set forth in the Report and Recommendation,[1] this case was initiated in the District Court on February 12, 2008, when plaintiffs Lynne McClure, Patrick McClure, and Shawn McClure (collectively, the "McClures" or "plaintiffs") filed their original complaint and demand for jury trial against defendants Greater San Antonio Transportation Company d/b/a Yellow Checker Cab ("GSTC," or at times "Yellow Checker Cab") and Abubakr Hamed ("Mr. Hamed") (collectively "defendants").[2] The original complaint concerns injuries Lynne McClure allegedly sustained during a motor vehicle accident that occurred on March 19, 2006, when she was a passenger in a Yellow Checker Cab driven by Mr.

---

[1]   This discussion is taken from pages 2 through 5 of the First Report and Recommendation (docket no. 88).

[2]   Docket no. 1.

Hamed. Mr. Hamed filed his original answer on March 4, 2008,[3] and GSTC filed its original answer and demand for jury trial on March 14, 2008.[4]

This Court referred this case to the Magistrate Judge on July 1, 2008, for pretrial proceedings.[5] On July 2, 2008, the McClures filed and the undersigned granted a motion for leave to amend their original complaint.[6] The first amended complaint alleges defendants are common carriers "having a duty to exercise that high degree of care that a very cautious, competent, and prudent person would use for the safety of its passengers, like Dr. Lynne McClure."[7] The amended complaint asserts GSTC is estopped by contract from denying its status as a common carrier.[8] In addition, against Mr. Hamed, the amended complaint alleges claims for negligence and negligence per se, in sum, for the manner in which he drove and handled the taxicab at the time of the accident and for failure to comply with certain provisions of the Texas Transportation Code.[9] Against GSTC, the amended complaint alleges, in sum, claims for: negligent maintenance of the taxicab; negligent entrustment; "negligent hiring, retaining, recommending, sponsoring, and promoting Defendant Hamed;" vicarious liability under the theories of respondeat superior–employee, branded vehicle doctrine, joint enterprise, agency, respondeat superior–nonemployee, and non-delegable duty of common carrier; and spoliation of evidence.[10] As

---

[3] Docket no. 6.

[4] Docket nos. 11 and 12.

[5] Docket no. 40.

[6] Docket no. 41 and 42.

[7] Docket no. 43 at 4.

[8] Id. at 4-7.

[9] Id. at 7-8.

[10] Id. at 8-14

3

relief, the McClures are seeking damages for: (1) Lynne McClure – medical expenses of $850,000.00 in the past and $4,000,000.00 in the future as well as physical pain, mental anguish, impairment, and disfigurement, all past and future; (2) Patrick McClure – loss of spousal consortium and loss of household services, both past and future; and (3) Shawn McClure – loss of parental consortium, past and future.[11]

The docket in this case reflects that on June 6, 2008, Mr. Hamed filed a motion for leave to designate responsible third parties,[12] and GSTC subsequently filed a similar motion.[13] After responses and replies were filed to each motion,[14] the undersigned granted leave to designate Daimler-Chrysler Corporation, Williams Brothers Construction, Inc., the Texas Department of Transportation, T.D.A., Inc. and Jesus Guillen as responsible third-parties.[15]

On June 13, 2008, the McClures filed a motion for partial summary judgment and brief in support on the issue of defendants' status and duty as common carriers.[16] GSTC filed its response to the McClures' motion for partial summary judgment on June 23, 2008,[17] as well as its own motion for partial summary judgment.[18] On June 25, 2008, Mr. Hamed filed his response to the McClures' motion for partial summary judgment, and the McClures filed a reply in support of their motion, addressing

---

[11] <u>Id.</u> at 15.

[12] Docket nos. 23 and 28.

[13] Docket no. 39 (filed Jun. 24, 2008).

[14] Docket nos. 30, 33, 45.

[15] Docket nos. 48 and 49 (Jul. 10, 2008) and docket no. 50 (Jul. 14, 2008).

[16] Docket no. 29.

[17] Docket no. 34.

[18] Docket no. 35. GSTC's motion for partial summary judgment is addressed in a separate report and recommendation also issued on this day.

GSTC's response.[19]  The McClures filed their response to GSTC's motion for partial summary judgment on July 7, 2008.[20]  GSTC filed a reply in support of its motion for partial summary judgment on July 15, 2008,[21] and its first amended answer on July 23, 2008.[22]

On August 7, 2008, after leave was granted,[23] GSTC filed a sur-reply to the McClures' motion for partial summary judgment.[24]  The same day, at the Court's request, GSTC filed Tab D, which had inadvertently been omitted from the exhibits attached to its response to the McClures' motion for partial summary judgment.[25]  On August 13, 2008, the McClures filed separately a supplement to their response in opposition to GSTC's motion for partial summary judgment and a response to GSTC's sur-reply to plaintiff's motion for partial summary judgment.[26]  On August 21, 2008, GSTC filed a supplemental reply to the McClures' supplemental response.[27]

## FACTUAL BACKGROUND

As discussed by the Magistrate Judge,[28] the following facts are uncontested, unless otherwise

---

[19]  Docket nos. 37 and 38.

[20]  Docket no. 44.

[21]  Docket no. 53.

[22]  Docket no. 58.

[23]  Docket no. 63.

[24]  Docket no. 64.

[25]  Docket no. 62.

[26]  Docket nos. 69 and 70.

[27]  Docket no. 74.

[28]  This discussion is taken from pages 5 though 7 of the First Report and Recommendation (docket no. 88).

stated, and are set forth to provide a context for the McClures' motion for partial summary judgment.[29]

The facts are derived from: the McClures' first amended complaint;[30] Mr. Hamed's answer[31] and GSTC's first amended answer, to the extent the McClures' allegations are not denied;[32] the McClures' statement of uncontested facts as set forth in their motion for partial summary judgment;[33] exhibits attached to GSTC's summary judgment response;[34] and GSTC's statement of uncontested facts as set forth in its motion for partial summary judgment.[35] Other facts, disputed and undisputed, are set forth and discussed in the analysis of the merits of the motion in subsequent sections of this report.

Lynne, Patrick, and Shawn McClure are citizens and residents of Arizona.[36] GSTC is a Texas corporation[37] and Mr. Hamed is a resident alien residing and domiciled in San Antonio, Texas (at times, the "City").[38]

GSTC owns a fleet of taxicabs and entered into a "Taxicab Operating Permit Agreement" with the City "to conduct a public transportation service through the use of 513 taxicabs."[39] On March 7, 2006, Mr. Hamed obtained a temporary permit from the City to operate a vehicle for hire for

---

[29] Docket no. 29.

[30] Docket no. 43.

[31] Docket no. 6.

[32] Docket no. 58.

[33] Docket no. 29 at 3-5.

[34] Docket no. 34.

[35] Docket no. 35 at 2-4.

[36] Docket no. 43 at 1, ¶ 1.1.

[37] Docket no. 58 at 1, ¶ 1.2.

[38] Docket no. 6 at 1, ¶ 1.3.

[39] Docket no. 58 at 2, ¶ 5.2.

"Yellow/Checker."[40] The same day, Mr. Hamed entered into an agreement with GSTC to operate a taxicab.[41]

On March 19, 2006, Lynne McClure was a passenger in a taxicab owned by GSTC and operated by Mr. Hamed.[42] As Mr. Hamed was driving on Highway 281 in a construction area, the taxicab was involved in a motor vehicle accident.[43] Plaintiffs allege that "[a]s a result of this violent collision, Plaintiff Lynne McClure suffered serious and permanent injuries including but not limited to a traumatic brain injury and multiple fractures[.]"[44]

## THE ARGUMENTS OF THE PARTIES AND FINDINGS OF THE MAGISTRATE JUDGE

The Magistrate Judge considered whether the McClures are entitled to partial summary judgment on their claim that GSTC and Mr. Hamed are common carriers who owed Lynn McClure a high standard of care.[45] The McClures moved for partial summary judgment on the issues of whether: "(1) Defendant [GSTC] was acting as a common carrier; (2) Defendant [GSTC] owed Plaintiff a non-delegable duty to use a high degree of care; (3) Defendant Hamed was acting as a common carrier; and (4) Defendant Hamed owed Plaintiff a duty to use a high degree of care."[46] The McClures argued

---

[40]  Docket no. 29, exhibit 3; docket no. 35 at 2-3.

[41]  Docket no. 34, tab A; docket no. 35, exhibit 2 at agreement.

[42]  Docket no. 43 at 3, ¶ 4.1; docket no. 6 at 2, ¶ 4.1; docket no. 58 at 2, ¶ 4.1.

[43]  Id.

[44]  Docket no. 43 at 3, ¶ 4.1.

[45]  The following discussion is taken from page 7 and pages 9 though 19 of the First Report and Recommendation (docket no. 88).

[46]  Docket no. 29 at 2.

"Defendants represent the quintessential example of [] "common carrier[s]."[47]

With respect to GSTC's status as a common carrier, the McClures contended the undisputed evidence:

> demonstrates that Yellow Checker Cab parades thought the streets of San Antonio 365 days a year waiving its banner as the largest taxicab company in San Antonio with "over 500 cabs," with "citywide service 24/7," and the city's "only computer dispatched fleet."[48]

The McClures asserted, in sum, that GSTC profits off the streets and citizens because of its contractual agreement with the City, as required by § 33-006(a), San Antonio, Texas, Code of Ordinances (at times, "City Ordinance"), to:

> conduct a public transportation business by taxicab in the City, that is, to pick up persons and property using taxicab vehicles within the City, and to transport such persons and property for hire over any street within the City[,][49]

which is the "text book definition of common carrier."[50] The McClures contended GSTC cannot deny it is a common carrier because the undisputed evidence shows GSTC has availed itself of the process set forth in the City's ordinances and "has been franchised the privilege of operating a common carrier business on the streets of San Antonio."[51] The McClures further contended that "[t]he Taxicab Operating Permit Agreement grants [GSTC] the authority to operate a "taxicab service" and requires that such service be "provided by the operation of 513 vehicles."[52] The McClures argued it is

---

[47] Id.

[48] Id.

[49] Id., exhibit 1 at ¶ 1.1.

[50] Id. at 2.

[51] Id. at 9.

[52] Id. (emphasis omitted).

undisputed that taxicab number 544, the vehicle at issue: was owned by GSTC; was one of the 513 taxicabs permitted under GSTC's agreement with the City; and had been entrusted to Mr. Hamed, who was sponsored by, and could only drive for, GSTC under its operating permit.[53] In light of the evidence, the McClures contended "there can be no genuine issue of material fact" that GSTC was acting as common carrier.[54] Anticipating GSTC's argument that it "contracts with drivers to provide the actual common carrier service,"[55] the McClures asserted GSTC is contractually estopped by its agreement with the City from denying its common carrier status,[56] and, as a matter of law, had a nondelegable duty to use a high degree of care.[57] In support of their motion for partial summary judgment, the McClures submitted the affidavit of Jason B. Stephens, Attorney of Record, with thirteen attached exhibits.[58]

In response, GSTC initially asserted the McClures' motion for partial summary judgment was "essentially identical" to a motion made in a previous state court "lawsuit plaintiffs non-suited approximately thirty days after the state court's denial" of the motion.[59] GSTC argued "nothing has

---

[53]  Id. at 11.

[54]  Id. at 12.

[55]  Id.

[56]  Id. at 12-15.

[57]  Id. at 16-18.

[58]  Id., exhibit A with exhibits 1-13. The thirteen exhibits are as follows: (1) Taxicab Operating Permit Agreement between GSTC and the City; (2) Texas certificate of title to taxicab number 544 showing GSTC is the owner; (3) Temporary Taxicab Driver Permit for Mr. Hamed; (4) the home page of Yellow Checker Cab's website; (5) Texas Peace Officer's Accident Report, San Antonio Police Department, number 06208161, dated Mar. 19, 2006; (6) photographs of the collision scene; (7) GSTC's internal incident report dated Mar. 20, 2006; (8) Mr. Hamed's handwritten description and drawing of the collision; (9) summary of Mr. Hamed's recorded statement; (10) narrative report of Veda Cuffee, GSTC Corporate Claims Manager; (11) excerpts from Ms. Cuffee's deposition; (12) excerpts from the deposition of Mike Barnard, GSTC President; and (13) excerpts from the deposition of John Smith, GSTC Driver Orientation/Customer Service Manager.

[59]  Docket no. 34 at 1.

changed since the state court denied plaintiffs' first motion as to GSTC," other than the forum, and the result should not change with the instant motion.[60] GSTC asserted the McClures failed to apprise this Court of recent Texas cases that hold "'common carrier analysis turns on the business of transportation and whether the primary purpose of the operator in question is, in fact, the business of transporting people or goods.'"[61] Accordingly, rather than relying on the "mistaken assumption that every 'taxi company' is a common carrier," GSTC argued the Court "should consider the specific function GSTC fulfills in the taxicab industry and ask whether it is primarily in the business of transporting persons for hire."[62] In that light, GSTC asserted: its employees are never hired to transport members of the public; transportation is provided by drivers who are not GSTC employees; GSTC is not hired by the public as all fares are paid to and retained by the independent contractor drivers; GSTC's primary function is to provide services to the independent contractor drivers, such as leasing taxicabs to the drivers, training the drivers, sponsoring them for licensing by the City, suggesting places to pick up passengers, and providing an optional dispatch service;[63] the relationships between the drivers, including Mr. Hamed, and GSTC are "governed by [] detailed Independent Contractor Agreement[s];[64] and the conduct of independent contractor drivers cannot be imputed to GSTC.[65]

---

[60] Id.

[61] Id. at 4 (quoting Speed Boat Leasing, Inc. v. Elmer, 124 S.W.3d 210, 212-13 (Tex. 2003)).

[62] Id. at 5.

[63] Id. at 6-7.

[64] Id. at 7.

[65] Id. at 8.

Additionally, GSTC argued the City's ordinances allow "permit holders like GSTC to operate either as traditional taxicab companies – which might satisfy the definition of a common carrier – or as lessors/suppliers to independent contractor drivers."[66] GSTC asserted an operating permit "was merely a procedural prerequisite to GSTC entering into independent contractor relationships with the taxicab drivers" and does not establish its primary function was to provide transportation for hire or its status as a common carrier.[67] GSTC asserted Texas case law has established that ordinances, similar to the City's, mandate that any taxi company ensure its drivers comply with the ordinances but do not impose on the taxi company strict liability for the torts of the drivers.[68] According to the argument, GSTC's "independent contractor relationship with drivers is not an illegal renegade arrangement created and operated outside the law" but "an arrangement expressly envisioned and authorized" by City Ordinance § 33-972. GSTC contended the McClures failed to advise the Court of § 33-972 and do not argue the provision is "void, illegal, unenforceable, or contrary to public policy" or its conditions have not been met.[69] Because the City's ordinances regulating taxicab companies and taxicab drivers have supplanted the common law regarding common carriers, GSTC argues the City's ordinances should dictate its duties and the applicable standard of care rather than the pre-ordinance common law pronouncements on which the McClures rely.[70]

With respect to the McClures' assertion of contractual estoppel, GSTC argued plaintiffs cannot rely on estoppel, a defensive mechanism, as an "alternative basis for establishing that GSTC is a

---

[66] Id.

[67] Id. at 9.

[68] Id. at 9-10.

[69] Id. at 10.

[70] Id. at 11-13.

common carrier."[71]  Rather, the McClures have the "burden as summary movants to conclusively establish GSTC's common carrier status – a burden they have not sustained."[72]  To the extent the McClures may properly rely on estoppel, GSTC contended plaintiffs cannot establish the doctrine's essential elements.  In support of its response, GSTC has submitted ten exhibits, including four of plaintiffs' exhibits.[73]

The McClures argued in reply that GSTC is attempting to recharacterize its business purpose which "the evidence unequivocally demonstrates that Defendant is a common carrier."[74]  The McClures contended "common carrier status is a duty question and accordingly is a question of law to be determined by the Court."[75]  In addition, the McClures contended the question of whether Mr. Hamed is an independent contractor is not relevant to the resolution of their motion for partial summary judgment.[76]  The McClures argued GSTC "cherry picks sound bites" from recent Texas case law to "suggest the long standing definition of common carrier has changed," but the same case law shows Texas defines common carries as "'those in the business of carrying passengers and goods who hold themselves out for hire by the public,'" as GSTC does through its agreement with the City and its

---

[71]  Id. at 13-14.

[72]  Id. at 14.

[73]  Id., PX-1, PX-2, PX-11, PX-12 and Tabs A-F.  The exhibits are as follows: PX-1, Taxicab Operating Permit Agreement between GSTC and the City; PX-2, certificate of title to taxicab number 544; PX-11, Ms. Cuffee's deposition; PX-12, Mr. Barnard's deposition; Tab A, Independent Contractor Agreement between GSTC and Mr. Hamed; Tab B, articles I and VII, Chapter 33, City Ordinance ; Tab C, Mr. Hamed's deposition; Tab D, the McClures' traditional motion for partial summary judgment, filed in state court; Tab E, state court order on the motion; and Tab F, order of voluntary nonsuit in the state court case.

[74]  Docket no. 38 at 1.

[75]  Id. at 2.

[76]  Id.

advertisements.[77] The McClures asserted public transportation "is not merely incidental, but rather is the heart, soul, and lifeblood of Defendant's business."[78] With respect to their reliance on estoppel, the McClures contended they have asserted quasi-estoppel because GSTC "cannot contract with the City, advertise to the public, and concede in sworn testimony that it 'conduct[s] a public transportation business by taxicab . . . for hire' and then advocate . . . that its business purpose is otherwise."[79] As for the City Ordinance, the McClures argued case law involving GSTC's sister company in Houston, Texas establishes such local ordinances are "merely regulatory in nature and [have] no bearing on tort liability."[80] Rather, the City Ordinance imposes a duty on GSTC to ensure that drivers comply with regulations set forth in the ordinances.[81] The McClures further argued GSTC has failed to cite any ordinance "provision that actually addresses the degree of care owed to passengers."[82] Because there is no such provision, the McClures asserted the controlling standard is the common law nondelegable duty owed to passengers by common carriers to use a high degree of care.[83]

GSTC filed a sur-reply, admitting "duty is ultimately a legal question" but arguing that "[u]nder Texas law, when a plaintiff seeks to impose a duty on another based on special circumstances of the relationship between the parties, the plaintiff has the burden to prove the factual predicates necessary

---

[77] Id. (quoting Speed Boat Leasing, 124 S.W.3d at 212) (emphasis added).

[78] Id. at 3.

[79] Id. at 3-4 (source of quotation unidentified).

[80] Id. at 4 (quoting Phillips v. McIntyre, 783 S.W.2d 261, 263 (Tex. App.–Texarkana 1989), rev'd on other grounds, 801 S.W. 2d 523, 524 (Tex. 1990) (agreeing with appellate court's conclusion that ordinance imposed no tort liability)) (emphasis added).

[81] Id. at 4-5.

[82] Id. at 5.

[83] Id.

to give rise to the duty alleged."[84]  GSTC contended disputes as to the factual predicates must be

submitted to the finder of fact.[85]  Because the McClures are seeking to impose on GSTC the elevated,

nondelegable duty of a common carrier, the taxicab company argued that to be entitled to summary

judgment, plaintiffs "must conclusively establish that status" under the Texas Supreme Court's recently

pronounced primary function test.[86]  GSTC asserted the McClures have not met this burden.[87]  In

addition, GSTC argued the McClures have cited no authority for their assertion that Mr. Hamed's status

as an independent contractor is not relevant to the disposition of their motion for summary judgment

or "explain[ed] why this Court should attempt to determine common carrier status without regard to any

other applicable laws and ordinances."[88]  GSTC asserted Texas courts have not held, as the McClures

suggest, that an ordinance can "never supply the standard of care for a common law duty."[89]  Rather,

GSTC argued, "Texas law is clear that regulatory statutes may define the standard of care for pre-

existing causes of action."[90]  Although City Ordinance § 33-972 has some regulatory aspects, GSTC

contended the McClures have not addressed the effect of the Ordinance's authorization of an

independent contractor relationship.  GSTC argues that by authorizing independent contractor drivers,

the City effectively acknowledges that permit holders would be relieved from common carrier status

---

[84]   Docket no. 64 at 1.

[85]   Id. at 2.

[86]   Id.

[87]   Id.

[88]   Id.

[89]   Id. at 4.

[90]   Id.

14

and vicarious liability for the drivers' torts.[91]  GSTC asserted the City, as a legislative body, has the "authority to supercede common law duties and place a higher burden of proof on injured parties than common law duties created by the courts" on common carriers.  GSTC argued the City did supercede common law duties when it enacted § 33-972.[92]

In response to the sur-reply, the McClures argued the Texas cases cited by GSTC showing that common carrier status is a factual issue are not applicable in this case.  Further, the McClures argue that even assuming such common carrier status is a factual issue, there is no evidence to show "Yellow Cab is anything but a common carrier."[93]  The McClures asserted the purported independent contractor agreement between GSTC and Mr. Hamed is not relevant to the question of common carrier status, and the contract is "nothing more than an attempt to accomplish what common law expressly prohibits – to delegate its nondelegable duty."[94]  Plaintiffs contend the contractor agreement is relevant only if "the Court determines that the common law duty of a common carrier has been abrogated by the local ordinance, which it has not."[95]  The McClures argued that in cases where other courts have recognized the validity of the contractor agreement, the issue of common carrier status was not raised or the collisions involved persons who were not owed a nondelegable duty.[96]  The McClures contended the "ultimate question before the Court in addressing [GSTC's] status as a common carrier is whether or not the common law nondelegable duty owed by a common carrier to its passengers has been abrogated

---

[91]  Id. at 4-5.

[92]  Id. at 5.

[93]  Docket no. 70 at 1-2.

[94]  Id. at 2.

[95]  Id.

[96]  Id. at 3.

by the local ordinance in San Antonio."[97]  Plaintiffs asserted an ordinance must expressly state an

intention to supercede a previously established common law duty, but here, the City Ordinance is

"wholly silent on both the Defendant's duty owed to passengers and its vicarious liability."[98]

After reviewing the arguments of the parties and the summary judgment evidence,[99] the

Magistrate Judge found the undisputed evidence establishes that at the time of the accident, GSTC's

primary function or business was to provide the citizens of San Antonio with public transportation with

513 taxicabs for hire.  In addition, the Magistrate Judge found the undisputed evidence shows GSTC

held itself out to provide public transportation by taxicabs for hire.  Thus, as set forth in the First Report

and Recommendation, the Magistrate Judge determined that, by definition under Texas law, GSTC was

a common carrier at the time of the accident.  The Magistrate Judge moreover found that the undisputed

evidence establishes that Mr. Hamed, the driver of the taxicab in which Lynn McClure was a passenger

at the time of the accident, was a common carrier.  The Magistrate Judge noted that, contrary to

defendants' arguments, no provision of the City Ordinance expressly abrogates Texas common law on

the common carrier status of a taxicab company or taxicab driver or the high standard of care owed by

a common carrier.  Nor did the Magistrate Judge find that any provision of the City Ordinance can be

construed in a manner that would be clearly repugnant to Texas common law on the duties owed by a

common carrier.  Therefore, the Magistrate Judge found GSTC and Mr. Hamed, as common carriers,

owed Lynn McClure the high standard of care "that would have been used by a very cautious,

---

[97] Id.

[98] Id. at 4-5

[99] The following discussion is taken from pages 29-30 of the First Report
and Recommendation (docket no. 88).

16

competent, and prudent person under the same or similar circumstances."[100]    Accordingly, the

Magistrate Judge determined that the McClures are entitled to summary judgment that GSTC and Mr.

Hamed are common carriers who owed Lynn McClure a high standard of care.

### GSTC'S OBJECTIONS TO THE FIRST REPORT AND RECOMMENDATION

GSTC objects to the First Report and Recommendation arguing San Antonio municipal

ordinances, not the common law, establish GSTC's standard of care.[101]    Specifically, GSTC argues

Section 33-972 of the San Antonio Code of Ordinances, which authorizes an independent contractor

relationship between GSTC and its drivers, supersedes the common law duty traditionally applicable

to common carriers.[102]    GSTC also argues "[t]he mere fact that GSTC was a permit holder does not

establish that its primary function was to provide public transportation for hire and, therefore, does not

establish that it is a common carrier."[103]    Finally, GSTC objects to the report arguing "the summary

judgment evidence demonstrates that GSTC's primary function is not transporting people for hire, but

providing services to independent contract drivers who transport people for hire."[104]    Plaintiffs respond

the Magistrate Judge correctly concluded defendant "Yellow Checker Cab owed Plaintiff Lynne

McClure the common law duty to provide that degree of care that would be exercised by a very cautious

and prudent person under the same or similar circumstances."

---

[100]    *Speed Boat Leasing*, 124 S.W.3d at 212.

[101]    Docket no. 98 at 2-3.

[102]    *Id.* at 3.

[103]    Id. at 4.

[104]    *Id.* at 4.

17

As discussed by the Magistrate Judge,[105] under Texas law, negligence consists of three elements: "1) a legal duty owed by one person to another; 2) a breach of that duty; and 3) damages proximately resulting from the breach."[106] Duty is the threshold question.[107] "[T]he existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence in question."[108]

The McClures contend defendants owed Lynn McClure the duty of care required of a common carrier. Under Texas law, common carriers are held to a high standard of care when transporting passengers, defined as "that degree of care that would be exercised by a very cautious and prudent person under the same or similar circumstances."[109] The Texas Supreme Court has defined common carriers as "those in the business of carrying passengers and goods who hold themselves out for hire by the public."[110] The underlying concept of a common carrier is "that of a transportation service,"[111] and

---

[105] The following discussion is taken from pages 20-28 of the Report and Recommendation (docket no. 88).

[106] Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990).

[107] Id.

[108] Id.

[109] Speed Boat Leasing, 124 S.W.3d at 212 (quoting Dallas Ry & Terminal Co. v. Travis, 125 Tex. 11, 78 S.W.2d 941, 942 (1935) and citing Mount Pleasant Indep. Sch. Dist. v. Lindburg, 766 S.W.2d 208, 213 (Tex. 1989); Texas Pattern Jury Charges 2.2, cmt.).

[110] Id. (quoting Lindburg, 766 S.W.2d at 213) (emphasis in original); see also Harper v. Agency Rent-A-Car, Inc., 905 F.2d 71, 73 (5th Cir. 1990) ("A common carrier is one who engages in the transportation of persons or things from place to place for hire, and who holds himself out to the public as ready and willing to serve the public indifferently, in the particular in which he is engaged." (quoting Burnett v. Riter, 276 S.W. 347, 349 (Tex. Civ. App.-Beaumont 1925, no writ))).

[111] Speed Boat Leasing, 124 S.W.3d at 212 (quoting Lake Transp., Inc. v. Railroad Comm'n of Tex., 505 S.W.2d 781, 784 (Tex. 1974)).

"the term has been held to include railroads, buses, airplanes, taxis, street cars, and other vehicles."[112]

To determine whether one provides transportation as a common carrier, courts are to "look to the[] primary function."[113] The question is "whether the business of the entity is public transportation or whether such transportation is 'only incidental to its primary business.'"[114]

To establish GSTC's status as common carrier, the McClures rely on provisions of Chapter 33 of the City Ordinance governing vehicles for hire and an agreement pursuant to Chapter 33 between GSTC and the City. Specifically, § 33-006 of Chapter 33(a) provides:

> A person shall not knowingly operate, allow to be operated, or cause to be operated, a ground transportation service as defined in section 33-003, or any other service providing ground transportation for hire, without first executing a standard city permit agreement with the city and receiving an operating permit pursuant thereto, nor shall a person transport a passenger for hire from within the city unless the person driving the vehicle for hire or another who employs or contracts with said driver has been granted such operating permit.[115]

Section 33-003 includes the following relevant definitions:

> "Ground transportation service" shall mean a service which utilizes vehicles for hire in the transportation of passengers from within the city and which includes, but is not limited to . . . taxicab service[.]

> "Operating permit" shall mean a city-issued certificate which authorizes the holder to operate the number of vehicles for hire specified therein.

> "Operator" shall mean the driver of a vehicle for hire, the owner of a vehicle for hire, or the holder of a vehicle for hire service.

---

[112] Id. at 212-13 (citing Howell v. City Towing Assoc., Inc., 717 S.W.2d 729, 731 (Tex. App.-San Antonio 1986, writ ref'd n.r.e.).

[113] Id. at 213.

[114] Id. (quoting Lindburg, 766 S.W.2d at 213); see also Harper, 905 F.2d at 73 ("The real test of whether one is a common carrier is whether he holds himself out that he will so long as he has room, carry for hire persons or goods brought to him for that purpose." (quoting Burnett, 276 S.W. at 349)).

[115] Docket no. 34, tab B, SAN ANTONIO, TEX., CODE OF ORDINANCES § 33-006(a).

"Permit agreement" shall mean the written agreement between the city and a person for an operating permit which authorizes the operation of a ground transportation service after the issuance of such operating permit.

"Taxicab service" shall mean a passenger ground transportation service operated for hire that uses taxicabs in the operation of the service and includes, but is not limited to, a facility from which the service is operated, taxicabs used in the operation of the service and a person who owns and/or operates said service.

"Vehicle for hire" shall mean every chauffeured vehicle, other than mass transit vehicles or vehicles involved in an organized car pool not available to the general public, which is operated for any fare or compensation and used for the transportation or passengers over the city streets. Such vehicles shall include but are not limited to taxicabs[.][116]

Section 33-007 requires the applicant for an operating permit "must be the person who will own and/or operate the proposed ground transportation service or if an association, the chief officer."[117] Once the operating permit is issued, the holder must commence the operation of a city-wide ground transportation service within ninety days.[118] The holder must "operate and maintain a city approved fleet of vehicles for hire consisting of the number of vehicles authorized and required by the permit agreement."[119] All vehicles in the holder's fleet must be permitted by the City,[120] and a "vehicle permit," or "city decal" is "affixed to a vehicle for hire which evidences the holder's authority to operate said vehicle pursuant to the holder's operating permit."[121]

As discussed by the Magistrate Judge, the undisputed evidence shows that, as required by Chapter 33, GSTC entered into a taxicab operating permit agreement (the "agreement") with the City

---

[116] Id. at § 33.003.

[117] Id. at § 33.007.

[118] Id. at § 33.009(a).

[119] Id. at § 33-929(a).

[120] Id. at § 33-006(b).

[121] Id. at § 33-003.

on April 1, 1994, and as relevant to the case, the agreement was amended on June 17, 2005.[122] The agreement specifies that GSTC is subject to Chapter 33 of the City Ordinance and is authorized

> to conduct a public transportation business by taxicab in the City, that is, to pick up persons and property using taxicab vehicles within the City, and to transport such persons and property for hire over any street within the City permitted by the provisions of Chapter 33[.][123]

GSTC is authorized "to furnish taxicab service" by the "operation of 513 vehicles, 14 of which must be handicapped accessible vehicles."[124]

GSTC contends neither Chapter 33 or the agreement include the terminology "common carrier," and GSTC's operating permit is a pre-requisite for independent contractor drivers to operate one of the company's taxicabs. However, contrary to GSTC's arguments, Chapter 33 and the required agreement establish GSTC's primary function is the business of providing public transportation for hire. GSTC cites no authority showing Chapter 33 or an agreement similar to the one at issue have been construed to alter GSTC's status under Texas law as a common carrier.

Chapter 33 "governs the operation of vehicles for hire and ground transportation services;"[125] defines ground transportation service as utilizing vehicles for hire, including taxicab service; and defines taxicab service as ground transportation service, including the "facility from which the service is operated, taxicabs used in the operation of the service, and a person who owns and/or operates said service."[126] As relevant to Chapter 33, the undisputed evidence shows GSTC owns 513 taxicabs that

---

[122] Docket no. 29, exhibit 1.

[123] Id. at ¶ 1.1.

[124] Id. at ¶ 5.2.

[125] Docket no. 34, tab B at § 33-002.

[126] Id. at § 33-003.

provide ground transportation for hire in the City. The evidence shows drivers lease taxicabs from GSTC for a fixed payment per day or week when the vehicle is in their possession.[127] Specifically, the lease fee for twenty-four hours is $75.[128] To lease a taxicab for one week, the driver must pay $450 for Monday through Sunday, payable on a daily basis at $75 on Monday through Saturday.[129] The lease payment is due regardless of whether the driver receives any fares or actually operates the taxicab.[130] Taxicab number 544, the vehicle in which Lynn McClure was a passenger at the time of the accident, is owned by GSTC.[131] Mr. Hamed, who was driving taxicab number 544 at the time of the accident,[132] obtained a temporary permit from the City on March 7, 2006, to drive a taxicab owned by GSTC.[133] To obtain the temporary permit and drive a taxicab in San Antonio, Mr. Hamed was required to be sponsored by a taxicab company holding a taxicab operating permit, here GSTC.[134] Because he was sponsored by GSTC, Mr. Hamed's temporary permit legally authorized him to drive only a GSTC

---

[127]  Docket no. 34, tab A at ¶ 8 (independent contractor agreement between GSTC and Mr. Hamed).

[128]  Id. at ¶ 8(a)(1).

[129]  Id. at ¶ 8(a)(2). Simple calculations show that if all 513 Yellow Checker Cabs were leased to independent contract drivers at $475 per week for 52 weeks per year, GSTC would accrue in excess of $12 million in lease revenue, 30% for compensation to GSTC for the taxicab and equipment and 70% to GSTC for items offered in addition to the taxicab and equipment. See id. at ¶ 8(b).

[130]  Id, PX-12 at 171-74 (Mr. Barnard's Aug. 30, 2007 deposition).

[131]  Compare docket no. 29, exhibit 2 (Texas Certificate of Title showing GSTC is owner of vehicle with VIN 1D4GP24R44B506863) and exhibit 7 (GSTC's incident report showing same information and cab is number 544S) with id., exhibit 5 (Texas Peace Officer's Crash Report showing vehicle with same VIN was involved in accident on Mar. 19, 2006)

[132]  Id., exhibit 5.

[133]  Id., exhibit 3.

[134]  Id., exhibit 12 at 37, 47 (excerpt from Mr. Barnard's deposition).

Yellow Checker Cab.[135]

In addition, based on the agreement required by Chapter 33, GSTC agreed to "conduct a public transportation business by taxicab."[136] "Conduct" is commonly defined as "[t]o manage; direct; lead; have direction; carry on; regulate; do business."[137] Accordingly, GSTC agreed to manage, carry on, or do business in the City as public transportation service by taxicab. Specifically, GSTC agreed to pick up and transport persons and property by taxicabs for hire that it owned. In other words, pursuant to the agreement, GSTC is a common carrier because its primary function is to provide public transportation service by taxicab for hire.[138] Who actually drives the vehicles – employees or contract drivers – does not alter GSTC's function or the terms of its agreement with the City.

Although GSTC does provide services to the drivers, as it asserts, such as leasing them vehicles, its primary function or business is to provide public transportation by taxicabs for hire. GSTC holds the operating permit and vehicle permits for 513 taxicabs; owns, insures, and maintains the vehicles;[139] furnishes advertising for the taxicab service;[140] and determines who can be independent contract drivers. If the operating permit were rescinded due to GSTC's violations of the agreement or Chapter 33, if the City refused to renew the agreement on expiration, or if GSTC stopped doing business in the City, 513

---

[135] Id., exhibit 13 at 38-40 (excerpt from Aug. 29, 2007 deposition of John Smith, GSTC Customer Services Manager).

[136] Docket no. 29, exhibit 1 at ¶ 1.1.

[137] BLACK'S LAW DICTIONARY, 295 (6th ed. 1990) (emphasis added).

[138] See Speed Boat Leasing, 124 S.W.3d at 212 ("We have stated that the 'underlying concept' of a common carrier is 'that of a transportation service'" (citation omitted)).

[139] Docket no. 34, tab A at ¶¶ 2 and 11(d).

[140] Docket no. 29, exhibit 4 (copy of Yellow Checker Cab website).

Yellow Check Cabs would be unavailable and at least that many drivers would be unable to continue in their own right to provide public transportation by taxicab for hire.

Moreover, GSTC holds itself out to the citizens of San Antonio as a provider of public transportation by taxicab for hire.[141] A copy of the Yellow Checker Cab website from December 2006, advertises that the company operates: "San Antonio's only computer dispatched fleet. 500 cabs. Citywide service 24/7" and provides a telephone number for service or a link for "order[ing] a taxi."[142] There is no dispute the taxicabs are all the same color and bear the logo "Yellow Checker" with GSTC's telephone number.[143] Under the Texas Supreme Court's recent pronouncement in Speed Boat Leasing, Inc. v. Elmer, GSTC is a common carrier because it has held itself out to the public for hire to transport passengers.

GSTC asserts the City Ordinance has supplanted the common law duty of care it owes

----

[141] Speed Boat Leasing, 124 S.W.3d at 212; Burnett, 276 S.W. at 348 (explaining "[a] taxicab company, following the business of transporting persons for hire and holding itself out as ready to carry one and all indiscriminately, is a common carrier, and subject to all responsibilities as such"); see also Rodriguez v. Zavala, 279 S.W.2d 604, 607 (Tex. Civ. App.-San Antonio 1955, no writ) (quoting Economy Cabs v. Kirkland, 127 Fla. 867, 174 So. 222, 223-224 (1937) ("It is shown that some of the cabs were owned by third parties but all bore serial numbers, held themselves out to the public for hire in the name of Economy Cabs, and were required to be inscribed in a conspicuous place, Economy Cabs. None of the foregoing facts were contradicted. Under such state of facts the law will presume as to the public generally and the plaintiff that defendant cab and driver were a common carrier for hire and in the service of the company whose name it bore. . . . Third parties who happen to own a cab and use it in the name of the company at the call of the company and under the colors of the company will be treated as the company." (citations omitted)); Martin v. Weaver, 161 S.W.2d 812 (Tex. Civ. App.-El Paso 1941, no writ) (noting no question on appeal that 94 Transportation Company was common carrier; undisputed evidence showed: company owned one principal station and eight substations from which taxicabs were dispatched; all taxicabs operating out of stations bore company name; company required all drivers to wear uniforms; driver at issue was employed by company's manager to drive a taxicab owned by Martin; and Company had to approve driver).

[142] Docket no. 29, exhibit 4.

[143] Docket no. 34, PX-11 at 113 (Ms. Cuffee's Aug. 29, 2007 deposition); PX-12 at 97-100.

passengers through "an extremely thorough set of ordinances that regulate the conduct of taxicab companies and taxicab drivers."[144]  Specifically, GSTC quotes Chapter 33's "statement of policy" to:

> promote efficient, safe, reliable, and quality ground transportation services in the city. To this end, this chapter provides for the regulation of such services to be carried out in a manner that protects the public health and safety, promotes the public convenience and necessity, and respects the concept of free enterprise.[145]

GSTC cites provisions of Chapter 33 that regulate: minimum driver qualifications; background investigations; uniforms and appearance; safety standards for equipment and vehicles; and use of independent contract drivers.[146]  In its objections, GSTC also notes that it is required to provide insurance as a condition of contracting with drivers.[147]

As discussed by the Magistrate Judge, in Texas "[a]brogating common law claims 'is disfavored and requires a clear repugnance between the common law and statutory causes of action.'"[148]  Texas courts "have consistently declined to construe statutes to deprive citizens of common-law rights unless the Legislature (here the San Antonio City Council) clearly expressed that intent."[149]  GSTC has cited no provision of the City Ordinance that expressly states taxicab companies or taxicab drivers in the City owe a lesser duty of care to passengers than the high standard of care owed by common carriers under Texas common law to "provide that degree of care that would be exercised by a very cautious and

---

[144]   Docket no. 34 at 12.

[145]   Id., tab B at § 33-001.

[146]   Id. at 12-13.

[147]   Docket no. 98 at 3.

[148]   Cash Am. Int'l, Inc. v. Bennett, 35 S.W.3d 12, 16 (Tex. 2000) (quoting Holmans v. Transource Polymers, Inc., 914 S.W.2d 189, 192 (Tex. App.-Fort Worth 1995, writ denied)).

[149]   Id.

prudent person under the same or similar circumstances."[150] Nor can any provision of Chapter 33 be

construed in a manner that will be clearly repugnant to the common law regarding the duties owed by

a common carrier. For these and the reasons set forth in the First Report and Recommendation, this

Court agrees with the Magistrate Judge that the McClures are entitled to partial summary judgment that

GSTC is a common carrier who owed Lynn McClure a high standard of care. GSTC's objections to

the First Report and Recommendation are therefore overruled.

Finally, as is apparent from the summary of arguments, and as noted by the Magistrate Judge,[151]

much of GSTC's argument in opposition to the McClures' motion for partial summary judgment is

related to whether Mr. Hamed's independent contractor agreement affects GSTC's status as a common

carrier and its high standard of care. This argument is similar to the argument GSTC raises in support

of its motion for partial summary judgment.[152] Therefore, the parties' arguments regarding the effect

of the independent contractor agreement on GSTC's common carrier status were considered collectively

in a companion or Second Report and Recommendation[153] addressing GSTC's motion for partial

summary judgment.

IT IS THEREFORE ORDERED that the [First] Report and Recommendation of the United

States Magistrate Judge (docket no. 88) is ACCEPTED pursuant to 28 U.S.C. § 636(b)(1) such that

plaintiffs' motion for partial summary judgment (docket no. 29) on defendants' status as common

carriers and the duty both GSTC and Mr. Hamed owed to Lynn McClure is GRANTED. Having

---

[150]   Speed Boat Leasing, 124 S.W.3d at 212.

[151]   Docket no. 88 at 30.

[152]   Docket no. 35.

[153]   Docket no. 89.

accepted this [First] Report and Recommendation of the United States Magistrate Judge, and in the event this Court accepts the recommendations in the companion [Second] Report and Recommendation of the United States Magistrate Judge (docket no. 89), GSTC's motion for partial summary judgment, all claims against Mr. Hamed, as well as the claims against GSTC for vicarious liability under respondeat superior-employee, respondeat superior-nonemployee, agency, and branded vehicle doctrine will remain pending for further disposition.

It is so ORDERED.

SIGNED this _24_ day of March, 2009.

FRED BIERY
UNITED STATES DISTRICT JUDGE