IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION



**FILED**

MAR 2 4 2009

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
　　　　　　　DEPUTY CLERK

LYNNE McCLURE, PATRICK　　　　　)
McCLURE, and SHAWN McCLURE,　　)
　　　　　　　　　　　　　　　　)
　　　Plaintiffs,　　　　　　　　)
　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　 )　　CIVIL ACTION NO. SA-08-CA-112-FB
　　　　　　　　　　　　　　　　)
GREATER SAN ANTONIO　　　　　　)
TRANSPORTATION COMPANY d/b/a　)
Yellow Checker Cab, and　　　　　)
ABUBAKR HAMED,　　　　　　　　 )
　　　　　　　　　　　　　　　　)
　　　Defendants.,　　　　　　　 )

## ORDER ACCEPTING SECOND REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are the Report and Recommendation of the United States Magistrate Judge
(docket no. 89) (sometimes referred to as the Second Report and Recommendation) addressing
defendant Greater San Antonio Transportation Company's motion for partial summary judgment on
plaintiffs' vicarious and direct liability claims, along with plaintiffs' objections (docket no. 97)
thereto, defendant Greater San Antonio Transportation Company's objections (docket no. 99)
thereto, defendant Greater San Antonio Transportation Company's response (docket no. 106) to
plaintiffs' objections, plaintiffs' response (docket no. 108) to defendant Greater San Antonio
Transportation Company's objections, and defendant Greater San Antonio Transportation
Company's reply (docket no. 114) to plaintiffs' response to this defendant's objections. This is a
companion to the First Report and Recommendation (docket no. 88) issued on September 25, 2008.

Where no party has objected to a Magistrate Judge's Report and Recommendation, the Court
need not conduct a de novo review of the Report and Recommendation. See 28 U.S.C. § 636(b)(1)

("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings and recommendations to which objection is made."). In such cases, the Court need only review the Report and Recommendation and determine whether it is clearly erroneous or contrary to law. United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir.), cert. denied, 492 U.S. 918 (1989).

In the report, the Magistrate Judge recommends in part that this Court grant GSTC's motion for partial summary judgment and dismiss plaintiffs' claims for joint enterprise, negligent maintenance, negligent entrustment, and negligent hiring and retention. Plaintiffs have filed no objections to the Magistrate Judge's recommendations regarding these claims. The Magistrate Judge also recommends in part that this Court deny GSTC's motion on plaintiff's claim brought under the branded vehicle doctrine. GSTC has filed no objections to the recommendation regarding this claim. To this extent, the Court has reviewed the report and recommendation and finds it to be neither clearly erroneous nor contrary to law.

Any Report and Recommendation to which objection is made requires de novo review by the Court. Such a review means that the Court will examine the entire record, and will make an independent assessment of the law. The Court need not, however, conduct a de novo review when the objections are frivolous, conclusive, or general in nature. Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

The Magistrate Judge found Texas case law, more recent than that cited by the McClures, shows Texas courts do consider whether an independent contractor agreement affects any vicarious liability a taxicab company may have for the negligent acts of its drivers. The Magistrate Judge also found, although an independent contractor agreement existed between GSTC and Mr. Hamed, the

2

McClures have submitted evidence raising a genuine issue of material fact that GSTC actually exercised control over much of Mr. Hamed's work such that he was not an independent contractor at the time of the accident. Based on the Court's application of case law to the facts and arguments in this case, the Magistrate Judge thus recommends GSTC's motion for partial summary judgment on the McClures' claims of vicarious liability under theories of <u>respondeat superior</u>–employee, <u>respondeat superior</u>–nonemployee, and agency be denied. The McClures object to the Magistrate Judge's finding that a common carrier, such as GSTC, can enter into contracts to delegate the common carrier's duties and responsibilities so as to avoid liability for the negligent acts of independent contractors. GSTC objects to the finding that the McClures have raised a genuine issue of material fact that GSTC actually exercised control over Mr. Hamed's work at the time of the accident.

The Magistrate Judge further found the McClures failed to raise a genuine issue of material fact that GSTC breached its duty to provide defensive driving training or that such a breach was the proximate cause of Lynn McClure's injuries. Accordingly, the Magistrate Judge recommends GSTC's motion for partial summary judgment be granted on plaintiffs' negligent training claim. Plaintiffs filed objections to this recommendation.

The Court has thoroughly analyzed the parties' submissions in light of the entire record. As required by Title 28 U.S.C. § 636(b)(1)(c), the Court has conducted an independent review of the entire record in this cause and has conducted a <u>de novo</u> review with respect to those matters raised by the objections. After due consideration, the Court concludes the objections lack merit.

## PROCEDURAL HISTORY

As set forth in the Report and Recommendation,[1] this case was initiated in the District Court on February 12, 2008, when plaintiffs Lynne McClure, Patrick McClure, and Shawn McClure (collectively, the "McClures" or "plaintiffs") filed their original complaint and demand for jury trial against defendants Greater San Antonio Transportation Company d/b/a Yellow Checker Cab ("GSTC," or at times "Yellow Checker Cab") and Abubakr Hamed ("Mr. Hamed") (collectively "defendants").[2] The original complaint concerns injuries Lynne McClure allegedly sustained during a motor vehicle accident that occurred on March 19, 2006, when she was a passenger in a Yellow Checker Cab driven by Mr. Hamed. Mr. Hamed filed his original answer on March 4, 2008,[3] and GSTC filed its original answer and demand for jury trial on March 14, 2008.[4]

This Court referred this case to the Magistrate Judge on July 1, 2008, for pretrial proceedings.[5] On July 2, 2008, the McClures filed and the undersigned granted a motion for leave to amend their original complaint.[6] The first amended complaint alleges defendants are common carriers "having a duty to exercise that high degree of care that a very cautious, competent, and prudent person would use for the safety of its passengers, like Dr. Lynne McClure."[7] The amended

---

[1] This discussion is taken from pages 2 through 5 of the Second Report and Recommendation (docket no. 89).

[2] Docket no. 1.

[3] Docket no. 6.

[4] Docket nos. 11 and 12.

[5] Docket no. 40.

[6] Docket no. 41 and 42.

[7] Docket no. 43 at 4.

complaint asserts GSTC is estopped by contract from denying its status as a common carrier.[8] In addition, against Mr. Hamed, the amended complaint alleges claims for negligence and negligence per se, in sum, for the manner in which he drove and handled the taxicab at the time of the accident and for failure to comply with certain provisions of the Texas Transportation Code.[9] Against GSTC, the amended complaint alleges, in sum, claims for: negligent maintenance of the taxicab; negligent entrustment; "negligent hiring, retaining, recommending, sponsoring, and promoting Defendant Hamed;" vicarious liability under the theories of respondeat superior–employee, branded vehicle doctrine, joint enterprise, agency, respondeat superior–nonemployee, and non-delegable duty of common carrier; and spoliation of evidence.[10] As relief, the McClures are seeking damages for: (1) Lynne McClure – medical expenses of $850,000.00 in the past and $4,000,000.00 in the future as well as physical pain, mental anguish, impairment, and disfigurement, all past and future; (2) Patrick McClure – loss of spousal consortium and loss of household services, both past and future; and (3) Shawn McClure – loss of parental consortium, past and future.[11]

The docket in this case reflects that on June 6, 2008, Mr. Hamed filed a motion for leave to designate responsible third parties,[12] and GSTC subsequently filed a similar motion.[13] After responses and replies were filed to each motion,[14] the undersigned granted leave to designate

---

[8] Id. at 4-7.

[9] Id. at 7-8.

[10] Id. at 8-14

[11] Id. at 15.

[12] Docket nos. 23 and 28.

[13] Docket no. 39 (filed Jun. 24, 2008).

[14] Docket nos. 30, 33, 45.

Daimler-Chrysler Corporation, Williams Brothers Construction, Inc., the Texas Department of Transportation, T.D.A., Inc. and Jesus Guillen as responsible third-parties.[15]

On June 13, 2008, the McClures filed a motion for partial summary judgment and brief in support on the issue of defendants' status and duty as common carriers.[16] GSTC filed its response to the McClures' motion for partial summary judgment on June 23, 2008,[17] as well as its own motion for partial summary judgment.[18] On June 25, 2008, Mr. Hamed filed his response to the McClures' motion for partial summary judgment, and the McClures filed a reply in support of their motion, addressing GSTC's response.[19] The McClures filed their response to GSTC's motion for partial summary judgment on July 7, 2008.[20] GSTC filed a reply in support of its motion for partial summary judgment on July 15, 2008,[21] and its first amended answer on July 23, 2008.[22]

On August 7, 2008, after leave was granted,[23] GSTC filed a sur-reply to the McClures' motion for partial summary judgment.[24] The same day, at the Court's request, GSTC filed Tab D, which had inadvertently been omitted from the exhibits attached to its response to the McClures'

---

[15] Docket nos. 48 and 49 (Jul. 10, 2008) and docket no. 50 (Jul. 14, 2008).

[16] Docket no. 29.

[17] Docket no. 34.

[18] Docket no. 35. GSTC's motion for partial summary judgment was addressed in a separate First Report and Recommendation issued the same day.

[19] Docket nos. 37 and 38.

[20] Docket no. 44.

[21] Docket no. 53.

[22] Docket no. 58.

[23] Docket no. 63.

[24] Docket no. 64.

motion for partial summary judgment.[25]  On August 13, 2008, the McClures filed separately a
supplement to their response in opposition to GSTC's motion for partial summary judgment and a
response to GSTC's sur-reply to plaintiff's motion for partial summary judgment.[26]  On August 21,
2008, GSTC filed a supplemental reply to the McClures' supplemental response.[27]

## FACTUAL BACKGROUND

As discussed by the Magistrate Judge,[28] the following facts are uncontested, unless otherwise
stated, and are set forth to provide a context for the McClures' motion for partial summary
judgment.[29]  The facts are derived from: the McClures' first amended complaint;[30] Mr. Hamed's
answer[31] and GSTC's first amended answer, to the extent the McClures' allegations are not denied;[32]
the McClures' statement of uncontested facts as set forth in their motion for partial summary
judgment;[33] exhibits attached to GSTC's summary judgment response;[34] and GSTC's statement of
uncontested facts as set forth in its motion for partial summary judgment.[35]  Other facts, disputed and

---

[25] Docket no. 62.

[26] Docket nos. 69 and 70.

[27] Docket no. 74.

[28] This discussion is taken from pages 5 though 7 of the First Report and Recommendation (docket no. 88).

[29] Docket no. 29.

[30] Docket no. 43.

[31] Docket no. 6.

[32] Docket no. 58.

[33] Docket no. 29 at 3-5.

[34] Docket no. 34.

[35] Docket no. 35 at 2-4.

undisputed, are set forth and discussed in the analysis of the merits of the motion in subsequent sections of this Order.

Lynne, Patrick, and Shawn McClure are citizens and residents of Arizona.[36] GSTC is a Texas corporation[37] and Mr. Hamed is a resident alien residing and domiciled in San Antonio, Texas (at times, the "City").[38]

GSTC owns a fleet of taxicabs and entered into a "Taxicab Operating Permit Agreement" with the City "to conduct a public transportation service through the use of 513 taxicabs."[39] On March 7, 2006, Mr. Hamed obtained a temporary permit from the City to operate a vehicle for hire for "Yellow/Checker."[40] The same day, Mr. Hamed entered into an agreement with GSTC to operate a taxicab.[41]

On March 19, 2006, Lynne McClure was a passenger in a taxicab owned by GSTC and operated by Mr. Hamed.[42] As Mr. Hamed was driving on Highway 281 in a construction area, the taxicab was involved in a motor vehicle accident.[43] Plaintiffs allege that "[a]s a result of this violent

---

[36] Docket no. 43 at 1, ¶ 1.1.

[37] Docket no. 58 at 1, ¶ 1.2.

[38] Docket no. 6 at 1, ¶ 1.3.

[39] Docket no. 58 at 2, ¶ 5.2.

[40] Docket no. 29, exhibit 3; docket no. 35 at 2-3.

[41] Docket no. 34, tab A; docket no. 35, exhibit 2 at agreement.

[42] Docket no. 43 at 3, ¶ 4.1; docket no. 6 at 2, ¶ 4.1; docket no. 58 at 2, ¶ 4.1.

[43] Id.

collision, Plaintiff Lynne McClure suffered serious and permanent injuries including but not limited to a traumatic brain injury and multiple fractures[.]"[44]

## THE ARGUMENTS OF THE PARTIES, FINDINGS OF THE MAGISTRATE JUDGE, AND OBJECTIONS TO THE REPORT AND RECOMMENDATION

As noted above, the Magistrate Judge considered whether GSTC is entitled to partial summary judgment on the McClures' vicarious and direct liability claims.[45] Relevant to this proceeding, the report recommends the motion be denied with respect to plaintiffs' vicarious liability claims of respondeat superior–employee, respondeat superior–nonemployee, and agency, and granted with respect to plaintiffs' direct liability claim for negligent training.

A.   Vicarious Liability: Respondeat Superior–Employee, Respondeat Superior–Nonemployee, and Agency

The McClures allege GSTC is vicariously liable for Mr. Hamed's conduct, in part, under the theories of respondeat superior–employee, respondeat superior–nonemployee, and agency. GSTC has moved for summary judgment on the McClures' vicarious liability claims, arguing Mr. Hamed was an independent contractor pursuant to their agreement at the time of the accident such that GSTC is not liable for his conduct.[46] Specifically, in reference to the McClures' claim under the theory of respondeat superior–employee, GSTC argues "the evidence conclusively establishes that Hamed was acting as an independent contractor, not GSTC's employee, thus negating an element of plaintiffs' claim[]."[47] GSTC asserted that on the day of the accident, "a contract existed that

---

[44] Docket no. 43 at 3, ¶ 4.1.

[45] The following discussion is taken from page 7 and pages 10 through 52 of the second Report and Recommendation.

[46] Docket no. 35 at 5.

[47] Id.

expressly provided for an independent contractor relationship between GSTC and Hamed, and that contract did not give GSTC the right to control the details of Hamed's work."[48] For the same reason, GSTC argued the McClures cannot establish one element of their claim under the theory of respondeat superior–nonemployee, namely that "Hamed was subject to control by GSTC as to the details of the alleged mission."[49] GSTC argued its contract with Mr. Hamed expressly states the parties did not intend create an agency relationship. Further, GSTC argued it did not have the right to control, nor did it exercise control over, the details of Mr. Hamed's work, an element of the McClures' agency claim.[50] GSTC submitted four exhibits in support of its motion.[51]'

In response, with respect to all claims asserting GSTC's vicarious liability, the McClures argued that "Defendant's ploy is a flagrant attempt to circumvent long-standing Texas jurisprudence that common carriers, such as itself, owe their passengers a nondelegable duty to use a high degree of care."[52] Given the nondelegable duty of care, the McClures asserted: "Defendant's independent contractor defense is squarely defeated."[53] With respect to the specific theories of respondeat superior and agency relationship, the McClures argued that "there is no 'independent nature' to Hamed's work" because: he is prohibited from working for anyone but GSTC; his relationship with GSTC is continuous until the contract is terminated; GSTC furnished him with "every single piece

---

[48] Id. at 7.

[49] Id. at 9.

[50] Id.

[51] Id., exhibits 1-4. The exhibits are as follows: (1) plaintiffs' original complaint; (2) Mr. Barnard's affidavit with a copy of Mr. Hamed's independent contractor agreement ; (3) excerpts from Mr. Hamed's May 9, 2006 deposition testimony; and (4) Mr. Hamed's temporary taxicab driver permit.

[52] Docket no. 44 at 1 (emphasis in original); see also id. at 4-6.

[53] Id. at 1.

of equipment required to perform [his] job;" [54] GSTC provided him with all necessary training; GSTC provided him with "specific instructions, policies, and procedures;"[55] GSTC controlled and restricted his job performance; and GSTC ensured he complied with pertinent portions of the San Antonio, Texas, Code of Ordinances (at times, "City Ordinance") and regulations. In addition, GSTC: handled communications between Mr. Hamed and passengers, such as arranging for the time of arrival of the taxicab, providing information about lost personal items, and accepting payment by credit card;[56] tracked Mr. Hamed with a Global Position System ("GPS") installed in his taxicab; "monitor[ed] and track[ed] "the number of trips, miles and revenue generated by its drivers and report[ed] this information to the City;" [57] used its computer dispatch system to "organize[], prioritize[] and determine[] what customer calls are offered to which drivers;" [58] controlled passengers offered to drivers by maintaining records about drivers, such as whether they are Spanish speaking; wanted all drivers to respond promptly to dispatched calls; monitored the response time; and promoted its business based on the response time of its drivers. Further, on average, drivers received seventy-five percent of their fares from trips dispatched to them by GSTC. At the time of the accident, Mr. Hamed was relying on GSTC's dispatch system for most of his customers and "'all

---

[54] Id. at 10.

[55] Id. at 11.

[56] Id. at 12.

[57] Id. at 13.

[58] Id.

11

the information about where [he] needed to go.'"[59] The McClures submitted twenty-eight exhibits in support of their summary judgment response.[60]

GSTC replied that the cases the McClures have cited do not "address the validity of independent contractor agreements which are specifically authorized by law."[61] In addition, the McClures "fail to acknowledge that Texas courts in the last twenty years have expressly recognized independent contractor agreements in the taxi industry[,] have refused to find vicarious liability on any other theory[,]"[62] and have not found such agreements void for shirking of any responsibility established by Texas law.[63] GSTC asserts many of the facts the McClures rely for evidence that Mr. Hamed is not an independent contractor are requirements of the City Ordinance that authorizes GSTC to use such drivers, and Texas courts have found "similar evidence insufficient to impose vicarious liability for the torts of independent contractors."[64] GSTC contends "plaintiffs fail to cite

---

[59] Id. at 14 (quoting Mr. Hamed's May 9, 2006 deposition testimony at 98-100).

[60] Id., exhibits 1-28. The exhibits are as follows: (1) GSTC's operating permit agreement with the City; (2) GSTC's certificate of title to taxicab # 544; (3) Mr. Hamed's temporary driver permit from the City; (4) Yellow Check Cab's website homepage; (5) Texas peace officer's accident report for Mar. 19, 2006; (6) collision scene photographs; (7) GSTC's internal incident report from Mar. 20, 2006; (8) Mr. Hamed's handwritten description and drawing of the collision; (9) summary of Mr. Hamed's recorded statement summary; (10) Ms. Cuffee's narrative report; (11) excerpts from Ms. Cuffee's deposition; (12) excerpts from Mr. Smith's deposition; (13) Mr. Barnard's May 10, 2006 deposition; (14) Mr. Barnard's Aug. 30, 2007 deposition; (15) Mr. Hamed's May 9, 2006 deposition; (16) excerpts from the Feb. 21, 2007 deposition of Jim Herren, GSTC's maintenance manager; (17) excerpts from the Aug. 29, 2007 deposition of Mary Jane Ortiz, GSTC's Claims Adjuster; (18) excerpts from the Aug. 30, 2007 deposition of Miguel Constancio, GSTC's Operations Manager; (19) excerpts from the Dec. 12, 2007 deposition of Lloyd Pantoja, a GSTC driver trainer; (20) the maintenance file for taxicab # 544; (21) City of San Antonio Ground Transportation Transfer slip; (22) GSTC's Enrollee On-the-Road Orientation Checklist; (23) Yellow Check Cab's yellow pages advertisement; (24) GSTC's 2005 application for additional permits from the City; (25) GSTC's Mar. 2006 monthly operating report to the City; (26) GSTC's motion for summary judgment in a state court case; (27) the McClures' response to that motion; and (28) transcript showing GSTC conceded existence of a fact issue in the state case.

[61] Docket no. 53 at 1.

[62] Id.

[63] Id. at 1-2.

[64] Id. at 2.

any evidence that GSTC retained a right to control or controlled the details of Hamed's work, including when and where he worked, how he obtained clients, where he transported them, the sequence or order of trips, a deadline to complete trips, or how he was paid."[65]

The Magistrate Judge first considered the McClures' threshold argument that GSTC's motion for partial summary judgment on the vicarious liability claims should be denied because under Texas law, the generally recognized rule is that common carriers, such as taxicab companies, cannot enter contracts to delegate the common carriers' duties and responsibilities so as to avoid liability for the negligent acts of employees, agents, or independent contractors.[66] The Magistrate Judge concluded, based on the recent Texas case law, it appears GSTC, as a common carrier, could attempt to contractually shield itself from vicarious liability for the negligence of its independent contractor drivers as long as the company relinquished the right to control the drivers' work.[67] Nonetheless, the Magistrate Judge determined, the cases, particularly Weidner v. Sanchez, also reflect a contract is not necessarily conclusive of independent contractor status.[68]

1.    contractual right to control

The Magistrate Judge next addressed the issue of the contractual right to control. As discussed in the report, under Texas law, "the right to control the details of a person's work

---

[65] Id. at 3.

[66] See Berry v. Golden Light Coffee Co., 160 Tex. 128, 327 S.W.2d 436, 439 (1959) Gomez v. City Transp. Co. of Dallas, 262 S.W.2d 417, 421 (Tex. Civ. App.–Dallas 1953, writ ref'd n.r.e.); Milligan v. Southern Express, Inc., 246 S.W.2d 662, 664 (Tex. Civ. App.–Dallas 1952), questions certified to Texas Supreme Court, 151 Tex. 315, 250 S.W.2d 194, 194 (1952); King v. Brenham Automobile Co., 145 S.W. 278, 279 (Tex. Civ. App.–San Antonio 1912, no writ).

[67] Docket no. 89 at 17.

[68] See 14 S.W.3d 353, 375-76 (Tex. App.–Houston [14th dist.] 2000, no pet.).

determines whether an employment or independent contractor relationship exists."[69]  "Right to control may be shown by explicit contractual assignment or actual exercise of control."[70]  Whether the terms of a contract give the employer a retained right of control over work is a question of law, as is the construction of any contract; but the question of whether the employer actually exercised control over work is typically one for the fact finder.[71]  The Magistrate Judge set forth a summary of Texas Supreme Court opinions which show how these standards have been applied in non-taxicab company cases where independent contractor status is at issue:

> In Newspapers, Inc. v. Love, the Texas Supreme Court considered whether a question about the existence of a master-servant relationship that included the language "retained or exercised the power to control" was properly submitted to the jury on the evidence presented at trial.[72]  The Court, reversing and remanding for new trial, held the jury question was improper because it included the evidentiary issue of Newspapers' "exercise of control" when there was no evidence of such control.[73]  Although the evidence in the case showed Newspapers exercised actual control over some distributors, there was no evidence of actual control as to Cargile, the distributor at issue, and the only relevant evidence showed that under the terms of an agreement with Newspapers, Cargile was an independent contractor.  The Court explained:
>
> > From these authorities we take it that the terms of the agreement between the parties is of importance in determining the existence of a master-servant relationship and that the essential inquiry is whether or not the employer has the contract right to control the opposite contracting party in the details of the work to be performed.
>
> In the absence of evidence showing a different relationship between

---

[69] Id. at 373; Farrell, 908 S.W.2d at 3.

[70] Shell Oil Co. v. Khan, 138 S.W.3d 288, 292 (Tex. 2004); see also Dow Chem. Co. v. Bright, 89 S.W.3d 602, 607 (Tex. 2002); Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 783 (Tex. 2001).

[71] Shell Oil Co., 138 S.W.3d at 292 ; Dow Chem. Co., 89 S.W.3d at 607; Lee Lewis Constr., 70 S.W.3d at 783.

[72] 380 S.W.2d 582, 584-85 (Tex. 1964).

[73] Id. at 584, 592.

the parties, the fact that the alleged servant was performing services peculiar to the principal's business or affairs establishes prima facie that the relationship of master and servant exists between them. When, however, the parties, as in this case, have entered into a definite contract that expressly provides for an independent contract relationship and does not vest in the principal or the employer the right to control the details of the work, evidence outside the contract must be produced to show that despite the terms of the primary contract the true operating agreement was one which vested the right of control in the alleged master. Under such circumstances, the exercise of control is evidentiary only. The true test remains the right of control. The exercise of control in cases such as this is not an ultimate test of the master and servant relationship. To hold that it was, would be to practically destroy contract rights and relationships based thereon. The assumption of an exercise of control must be so persistent and the acquiescence therein so pronounced as to raise an inference that at the time of the act or omission giving rise to liability, the parties by implied consent and acquiescence had agreed that the principal might have the right to control the details of the work.[74]

More recently, in Shell Oil Company v. Khan, the Texas Supreme Court reversed a court of appeals holding that a fact issue existed about Shell's right to control and rendered judgment for Shell.[75] The Supreme Court, relying on rules of contract construction,[76] concluded that under the terms of a dealer agreement and lease agreement between Shell and a gasoline station operator, Shell had not retained the right to control security-related activities at the station and an independent contractor relationship existed between Shell and the operator in that regard.[77] Because the plaintiff, the operator's employee, did not produce contrary evidence showing Shell's exercise of control over the station's security, the Supreme Court held the trial court had properly granted summary judgment that the operator, as an independent contractor, owed its employee the duty to conduct safety and security operations with care, but Shell did not.[78]

Similarly, in Dow Chemical Company v. Bright, the Texas Supreme Court reversed

---

[74] Id. at 591-92.

[75]a 138 S.W.3d at 290.

[76] Id. at 292.

[77] Id. at 292-94.

[78] Id. at 295.

and rendered judgment for Dow, finding the court of appeals had erred in holding the evidence raised a genuine issue of material fact about the extent of Dow's supervisory control.[79] The Supreme Court first considered the terms of a construction contract between Dow and a contractor and concluded the contract did not give "Dow the right to control to control the means, methods, or details" of the contractor's work or to direct the order of the work.[80] The Court then considered whether the plaintiff's evidence showed Dow's actual exercise of control at the construction site and held the evidence raised no genuine issues of material fact "about the extent of contractual control or actual control retained by Dow."[81]

On the other hand, in Lee Lewis Construction, Inc. v. Harrison, the Texas Supreme Court found evidence of actual control supported a jury verdict against the construction company.[82] On appeal, the construction company challenged the "legal sufficiency of the evidence to support the jury's finding that it retained the right to control safety on the job site and the court of appeals interpretation of the contracts at issue."[83] The Supreme Court considered evidence showing the construction company had assigned a job superintendent to routinely inspect the area where the accident occurred for "proper utilization of fall protection equipment," and the superintendent had: witnessed and approved the fall protection system used; approved of the lanyard system; and knew of but did not object to the use of a bosun's chair without an independent lifeline. [84] The Court held the evidence "constitute[d] more than a scintilla of evidence that [the construction company] retained the right to control fall-protection systems on the job site" and "had a duty of care toward Harrison commensurate with that right." [85] Given this finding, the Court concluded it need not address the argument that the construction company did not retain the contractual right to control.[86]

In Weidner and Farrell, two Texas courts of appeals restated these holdings in considering independent contractor relationships between drivers and taxicab

---

[79]  89 S.W.3d at 604.

[80]  Id. at 606-07.

[81]  Id. at 611.

[82]  70 S.W.3d at 782-83.

[83]  Id. at 783.

[84]  Id. at 784.

[85]  Id.

[86]  Id.

companies. These courts explained that an express written contract is determinative of independent contractor relationship absent extrinsic evidence that the hiring party exercised control in a manner inconsistent with the contract, the contract was a subterfuge, or a subsequent agreement expressly or intrinsically modified the original contract.[87] When "a contract establishes an independent contractor relationship and does not grant control over the details of the work to the principal, then evidence outside the contract must be produced to show that despite the contract terms, the true operating agreement vested the right of control in the principal."[88] The contract is not necessarily destroyed by sporadic control of work details. [89] A settled independent contractor relationship should not be destroyed by an occasional assertion of control.[90]

In this case, as set forth in the report, the evidence shows the only agreement between GSTC and Mr. Hamed was executed on March 7, 2006.[91] That agreement expressly provides the parties' agreement that Mr. Hamed would operate as an independent contractor:

> It is the intention of the parties that this agreement establishes contractor [Mr. Hamed] as an independent contractor of Yellow. . . . This agreement does not establish contractor as an agent, legal representative, joint venturer or partner of any affiliated company [GSTC and any and all companies related through ownership to GSTC]. Contractor is not authorized to make any contract, agreement, warranty, representation, or to create any obligation, expressed or implied, on behalf of any affiliated company. Contractor is not an employee of any affiliated company. Contractor will not and is not entitled to receive benefits, including retirement or worker's compensation benefits, traditionally associated with an employee/employer relationship.[92]

The agreement contains at least two other provisions that demonstrate the parties intention that Mr. Hamed would operate his business as an independent contractor:

---

[87] Weider, 14 S.W.3d at 373 (citing Newspapers, 380 S.W.2d at 590 and Humphreys v. Texas Power & Light Co., 427 S.W.2d 324, 329 (Tex. Civ. App.–Dallas 1968, writ ref'd n.r.e.)).

[88] Weidner, 14 S.W.3d at 374; Farrrell, 908 S.W.2d at 3 (citing Newspapers, 380 S.W.2d at 592).

[89] Id.

[90] Id.

[91] Docket no 35, exhibit 3 at 193.

[92] Id., exhibit 2, Mr. Barnard's affidavit at exhibit A, the independent contractor agreement at 1, ¶ 3(a).

> Contractor, in contractor's sole discretion, subject to any restrictions contained herein, shall determine if contractor shall work, in what zone(s) or areas contractor shall operate, the days and hours contractor shall work, the routes over which contractor shall carry contractor's customers and the methods by which contractor shall obtain contractors customers.[93]

and

> Contractor further acknowledges contractor, not Yellow, is responsible as an independent contractor to prepare all reports and make all payments required by any taxing authorities, whether federal or state, including self-employment taxes.[94]

From a fair reading of the agreement as a whole, the Magistrate Judge found it cannot be construed to give GSTC a contractual right to control Mr. Hamed's work. Therefore, to withstand summary judgment, the Magistrate Judge determined that the McClures must have submitted evidence showing GSTC actually exercised control over Mr. Hamed's work in a manner inconsistent with the agreement.[95]

2.    Actual Exercise of Control

Regarding the actual exercise of control, the Magistrate Judge noted that Texas courts have explained: "The assumption of an exercise of control must be so persistent and the acquiescence therein so pronounced as to raise an inference that at the time of the act or omission giving rise to liability, the parties by implied consent and acquiescence had agreed that the principal might have

---

[93] Id. at ¶ 3(b).

[94] Id. at ¶ 3(c).

[95] See Weider, 14 S.W.3d at 373.

18

the right to control the details of the work."[96]  As discussed in the report, the actual exercise of control is generally a question for the fact finder.[97]

Texas courts consider, the Magistrate Judge continued,  the following factors in assessing whether an employer actually has the right to control the work:

> (1) the independent nature of the worker's business; (2) the worker's obligation to furnish necessary tools, supplies, and materials to perform the job; (3) the worker's right to control the progress of the work except as to final results; (4) the time for which the worker is employed; and (5) the method of payment, whether by unit of time or by the job.[98]

Each of these factors need not be present to make a finding on right to control.[99]  That a "person is normally an independent contractor does not preclude a finding of agency as to the particular transaction at issue."[100]

The Magistrate Judge found the McClures have raised a genuine issue of material fact as to whether, contrary to the intent of the agreement, GSTC actually exercised control over Mr. Hamed's work at the time of the accident.  The report thus recommends GSTC's motion for partial summary judgment on the McClures' negligence claims under theories of  respondeat superior–employee, respondeat superior–nonemployee, and agency be denied.

---

[96]  Newspapers, 380 S.W.2d at 591-92; Weidner, 14 S.W.3d at 373.

[97]  Shell Oil, 138 S.W.3d at 292; Dow Chem., 89 S.W.3d at 607; Lee Lewis Constr., 70 S.W.3d at 783.

[98]  Pitchfork Land & Cattle Co. v. King, 162 Tex. 331, 346 S.W.2d 598, 603 (1961); Eagle Trucking Co. v. Texas Bitulithic Co., 590 S.W.2d 200, 211 (Tex. Civ. App.–Tyler 1979), aff'd in part & rev'd in part on other grounds, 612 S.W.2d 503 (Tex. 1981); William Sommerville & Son, Inc. v. Carter, 571 S.W.2d 953, 956 (Tex. Civ. App.–Tyler 1978), aff'd, 584 S.W.2d 274 (Tex. 1979); see also Farrell, 908 S.W.2d at 3; INA of Tex. v. Torres, 808 S.W.2d 291, 293 (Tex. App.–Houston [1st Dist] 1991, no writ).

[99]  Thompson v. Travelers Indem. Co., 789 S.W.2d 277, 278-79 (Tex. 1990).

[100]  Weidner, 14 S.W.3d at 374 (citing Jim Stephenson Motor Co. v. Amundson, 711 S.W.2d 665, 670-71 (Tex. App.–Dallas 1986, writ ref'd n.r.e.)).

a.    Plaintiffs' Objections

As they did before the Magistrate Judge, plaintiffs object to the recommendation arguing

defendants cannot circumvent long-standing Texas jurisprudence that common carriers, such as

itself, owe their passengers a nondelegable duty to use a high degree of care.[101]    Given the

nondelegable duty of care, the McClures assert that GSTC's independent contractor defense is

squarely defeated.[102]  As discussed by the Magistrate Judge, however, recent Texas cases suggest the

McClures' argument is not dispositive of GSTC's motion.[103]

> Texas courts have considered whether independent contractor status might, under the
> right circumstances, modify the liability of a taxicab company.
>
> In Farrell v. Greater Houston Transportation Company, the Houston Court of
> Appeals, 1st District, affirmed a summary judgment in favor of the taxicab
> company.[104]  The court of appeals extensively set forth the Texas standards applicable
> to determining independent contractor status and held in relevant part that the
> plaintiff's evidence failed to raise a fact issue that the taxicab company controlled the
> work of the driver such that the driver would be an employee rather than independent
> contractor.[105]
>
> Subsequently, in Weidner v. Sanchez, the Houston Court of Appeals, 14th District,
> held the trial court properly denied defendant taxicab company's request for directed
> verdict on plaintiff's respondeat superior theory of recovery because the independent
> contractor agreement had been modified by a subsequent agreement giving the
> taxicab company the right to control and actual control over the driver's work under
> the facts of the case.[106]  The court of appeals also found the trial court submitted a
> jury "question in substantially correct form" regarding whether the driver was an

---

[101]  Docket no. 44 at 1 (emphasis in original); see also id. at 4-6; docket no. 97 at 1.

[102]  Id. at 1.

[103]  The following discussion is quoted from pages 14 through 17 of the Second Report and Recommendation (docket no. 89).

[104]  908 S.W.2d 1, 2 (Tex. App.–Houston [1st Dist.] 1995, writ denied).

[105]  Id. at 3-4.

[106]  14 S.W.3d 353, 375 (Tex. App.–Houston [14th Dist.] 2000, no pet.).

employee of the taxicab company.[107] The court of appeals explained the following language "tracked the applicable pattern jury charge question" and "adequately instructed the jury on the law of independent contractor and whether a pre-existing independent contractor relationship should be deemed conclusive:"[108]

> An "employee" is a person in the service of another with the understanding, express or implied, that such person has the right to direct the details of the work and not merely the results to be accomplished.

> A person is not acting as an employee if he is acting as an independent contractor. An "independent contractor" is a person who, in pursuit of an independent business, undertakes to do specific work for another person, using his own means and methods without submitting himself to the control of such other person with respect to the details of the work, and who represents the will of such other person only as a result of his work, and not as to the means by which it is accomplished.

> A written contract expressly excluding any right of control over the details of the work is not conclusive if it was a subterfuge from the beginning or was persistently ignored or was modified by the subsequent express or implied agreement of the parties; otherwise such a contract is conclusive.[109]

Although not directly on point, in Houston Cab Company v. Fields, the Beaumont Court of Appeals noted the driver was an independent contractor, considered the terms of the independent contractor agreement and the taxicab company's policies for hiring independent contractors, and reversed the judgment against the taxicab company for negligent entrustment. The court of appeals held in part that the taxicab company's violations of its independent contractor policies did not relieve the plaintiff of the burden to prove the elements of a negligent entrustment claim, specifically the driver's recklessness or incompetence.[110]

Finally, in Greater Houston Transportation Co. v. Phillips, the Texas Supreme Court reversed and rendered judgment for a taxicab company, holding that, under the facts

---

[107] Id. at 375-76.

[108] Id. at 376.

[109] Id. at 375-76.

[110] 249 S.W.3d 741, 743-44, 747-48, 750 (Tex. App.–Beaumont 2008, no pet.).

of the case, "the cab company had no duty to warn its cab drivers not to carry guns."[111] In reaching its holding, the Texas court stated the general principle that "there is no duty to control the conduct of third persons" except when a "special relationship exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct."[112] As relevant to the present case, one special relationship the Court mentioned that may impose liability for the actions of a third person was that of contractee/independent contractor when the contractee "retains the right to control the contractor's work."[113]

Plaintiffs argue Farrell and Phillips are distinguishable because neither accident involved the taxicab's own passengers.[114] However, none of the plaintiffs in the cases upon which plaintiffs rely in support of their non-delegable duty claim were passengers of the common carrier defendant.[115]

Plaintiffs also argue Fields and Weidner are distinguishable because the plaintiffs did not raise or rely upon the nondelegable duty owed by the taxicab company.[116] The Magistrate Judge noted Fields was not directly on point and, in any event, all the cases cited in the report consider "whether independent contractor status might, under the right circumstances, modify the liability of a taxicab company."[117] Moreover, the plaintiffs in both Farrell and Phillips made arguments similar

---

[111] 801 S.W.2d 523, 527 (Tex. 1990).

[112] Id. at 525 (citing Otis Eng'g Corp v. Clark, 668 S.W.2d 307, 312 (Tex. 1983) and RESTATEMENT (SECOND) OF TORTS § 315 (1965)).

[113] Id. (quoting Exxon Corp. v. Quinn, 726 S.W.2d 17, 20 (Tex. 1987) and citing RESTATEMENT (SECOND) OF TORTS §§ 316-20 (1965)). In Phillips, the Texas Supreme Court noted plaintiff argued on appeal that the taxicab company controlled the work of the driver but rejected the argument because "Phillips simply failed to plead and prove control, one of the necessary elements for liability" under the contractee/independent contractor theory. Id. at 526.

[114] Docket no. 97 at 8-9.

[115] See Berry v. Golden Light Coffee Co., 160 Tex. 128, 327 S.W.2d 436 (1959); Gomez v. City Transp. Co. of Dallas, 262 S.W.2d 417 (Tex. Civ. App.–Dallas 1953, writ ref'd n.r.e.); Milligan v. Southern Express, Inc., 246 S.W.2d 662 (Tex. Civ. App.–Dallas 1952), questions certified to Texas Supreme Court, 151 Tex. 315, 250 S.W.2d 194, 194 (1952); King v. Brenham Automobile Co., 145 S.W. 278, (Tex. Civ. App.–San Antonio 1912, no writ).

[116] Docket no. 97 at 8-9.

[117] Docket no. 89 at 14, 16.

to the plaintiffs in this case–the taxi company was strictly liable for the torts of independent contractor drivers.[118]

Citing an El Paso case, Balboa v. Turismo Americanos,[119] plaintiffs also argue a federal district court in Texas has, as late as 2004, "acknowledged that '[t]here is further indication under Texas law that a duty to protect passengers may not be delegated by a common carrier to another party.' Id. (emphasis added)."[120] "The Balboa Court," plaintiffs continue, "similarly noted that common carriers "are held to a higher standard of care when transporting passengers.'"[121]

This Court declines to reject the analysis of the Magistrate Judge based on this unpublished case. In support of the proposition that there is an "indication under Texas law that a duty to protect passengers may not be delegated," the Balboa decision refers a court of appeals case decided in 1951.[122] Moreover, the Court in Balboa recognized "[t]here apparently has not been a decision by the Texas Supreme Court on whether such a duty can be delegated by a common carrier."[123] The Court therefore, "determine[d] in its best judgment, how the highest court of the state would resolve the issue if presented with the same case."[124] Based on recent Texas case law, and the analysis of the Magistrate Judge, there is authority to support the position that the Texas Supreme Court would

---

[118] Id. at 14-15, 16-17.

[119] Civil No. EP-03-CA-533(KC), 2004 U.S. Dist. LEXIS 440, *8 (W.D. Tex. Feb. 19, 2004).

[120] Docket no. 97 at 6.

[121] Id. (citing Balboa, 2004 U.S. Dist. LEXIS at *8).

[122] Balboa, 2004 U.S. Dist. Lexis at *8 (citing Bennevendo v. Houston Transit Co., 238 S.W.2d 271, 273 (Tex. App. 1951)).

[123] Id. at *8 n4.

[124] Id. (citing American Intern. Speciality Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 260 (5th Cir. 2003)).

resolve the issue in favor of finding that GSTC, as a common carrier, could attempt to contractually shield itself from vicarious liability for the negligence of its independent contractor drivers as long as the company relinquished the right to control the drivers' work.

Plaintiffs finally argue that "public policy is defeated by allowing a common carrier to delegate duty."[125] They contend "there is undoubtedly a strong public policy concern that passengers should feel safe when traveling in a taxicab in San Antonio."[126] A closer look reveals that the City carefully weighed public policy considerations when it adopted Chapter 33 of the San Antonio Code of Ordinances. Specifically, the Statement of Policy expresses the City's intent to promote safe and reliable ground transportation services while respecting the concept of free enterprise. The statement provides:

> It is the policy of the City to promote efficient, safe, reliable, and quality ground transportation services in the City. To this end, this chapter provides for the regulation of such services to be carried out in a manner that protects the public health and safety, promotes the public convenience and necessity, and respects the concept of free enterprise.[127]

Plaintiffs cite the public policy announced in King v. Brenham Automobile Co.[128] by the Court–"No responsible person or corporation could be held liable for the most outrageous acts of negligence." In King, a vehicle owned by the defendant taxi company collided with the plaintiff's buggy, destroying the buggy and causing the plaintiff serious injury.[129] The taxi was being driven

---

[125] Docket no. 97 at 13-17.

[126] Id. at 15.

[127] City of San Antonio Code of Ordinances § 33-001.

[128] 145 S.W. 278, 279 (Tex. Civ. App.–San Antonio 1912, no writ).

[129] Id. at 278.

by a 17-year-old boy who "was in the habit of running along the streets . . . at a rate of 16 miles an hour, in defiance of an ordinance . . . ."[130] The taxi company claimed the boy was in independent contractor, and its president testified it "[d]idn't make any difference whether he drove 40 miles or 80 miles; when I turned the machine over to him, I thought he had sense enough to know how to drive."[131] The Court determined the evidence demonstrated a master and servant relationship existed between the driver and the taxi company, but also stated that a common carrier should not be able to avoid liability by "such an outrageous contract."[132]

In contrast to the facts in King, permit holders in the City of San Antonio are not free to operate with no accountability. The City regulates permit holders and requires that any contract with an independent contractor impose a condition that the driver comply with all applicable rules and regulations and be included as an insured under the permit holder's liability policy. For example, section 33-972(a)(3) requires the permit holder include its independent contractor drivers on its insurance as required by City ordinance, an ordinance which states that the permit holder's insurance "shall inure to the benefit of any person who shall be injured or who shall sustain property damage as a result of the negligence of the holder or his servants or agents."[133] Through regulations the City has thus undertaken to "promote efficient, safe, reliable, and quality ground transportation services in the city" and at the same time respect "the concept of free enterprise" by allowing permit holders to choose to contractually shield themselves from vicarious liability through the use of independent

---

[130] Id. at 279.

[131] Id..

[132] Id. at 279-80.

[133] City of San Antonio Ordinances § 33-018(a).

contractor drivers.[134] These regulations address public policy concerns noted by plaintiffs to ensure independent contractor arrangements do not allow permit holders to "give free reign to irresponsible drivers."[135] For these and the reasons set forth in the report, the Court agrees with the Magistrate Judge that Texas case law, more recent than that cited by the McClures, shows Texas courts do consider whether an independent contractor agreement affects vicarious liability a taxicab company may have for the negligent acts of its drivers. Thus, it appears GSTC, as a common carrier, could attempt to contractually shield itself from vicarious liability for the negligence of its independent contractor drivers as long as the company relinquished the right to control the drivers' work. Accordingly, plaintiffs' objections are overruled.

b.     GSTC's Objections

GSTC objects to the finding that "the evidence raises a triable fact issue as to whether GSTC exercised actual control over [Mr.] Hamed in a manner inconsistent with his independent contractor status." As it did before the Magistrate Judge, GSTC argues the evidence suggests GSTC was merely complying with the City ordinance and regulations, the facts are insufficient to show GSTC had actual control over Mr. Hamed, and GSTC had no control over the activity which caused the injury in this case, the operation of the cab.

As discussed in the report, the first (independent nature of the worker's business), fourth (time for which the worker is employed), and fifth (method of payment, whether by unit of time or by the job) factors do little to show Mr. Hamed was GSTC's employee or agent at the time of the accident. With respect to the first factor, the deposition testimony of John Smith, GSTC's Customer

_____

[134] Id. at § 33-001.

[135] Docket no. 106 at 8 (citing King, 145 S.W. at 280).

Service Manager, shows Mr. Hamed was prohibited from driving a taxicab for any other company so long as he operated under GSTC's operating license,[136] but the McClures cite no authority showing that a person loses independent contractor status by agreeing to work solely for one person or that an independent contractor must always be free to work for others. [137] With respect to the fourth factor, as the McClures assert, the agreement between Mr. Hamed and GSTC provides for an initial term of one year, automatically renewed for subsequent one-year terms until the agreement might be terminated or cancelled by either Mr. Hamed or GSTC or by mutual consent.[138] But, in Farrell, similar evidence coupled with the taxicab driver's ability to determine when he would work – as in the terms of Mr. Hamed's agreement – was found to favor independent contractor status.[139] With respect to the fifth factor, there is no dispute that Mr. Hamed was paid by his customers, not by GSTC for a unit of time worked.

As noted by the Magistrate Judge, the McClures' evidence primarily focuses on the second (source of necessary tools, supplies, and materials to perform the job) and third (worker's right to control progress of work except final results) factors in the right to control analysis.[140] With respect

---

[136] Id., exhibit 12 at 39.

[137] See Farrell, 908 S.W.2d at 4 (one-year contract did not preclude independent contractor status when taxicab driver had ability to control when, where, and if he worked); Tirres v. El Paso Sand Prod., Inc., 808 S.W.2d 672, 674, 676 (Tex. App.–El Paso 1991, writ denied) (working under state permit issued to employer which dictated certain requirements did not alter independent contractor status).

[138] Docket no. 35, exhibit 2 at exhibit A at ¶¶ 1 and 13.

[139] 908 S.W.2d at 4.

[140] See docket no. 44 at 10-15. Again, each of the five factors need not be present to support a finding on right to control.

to the second factor, the deposition testimony of Mike Barnard, GSTC's president,[141] Mr. Hamed,[142] and Lloyd Pantoja, a GSTC trainer,[143] reflect that GSTC provided Mr. Hamed with: a taxicab and maintenance; color scheme, signage, and logos for the vehicle; telephone number and website address visible on the outside of the vehicle; a trip meter, GPS, dispatch equipment, credit card swiper, and in-vehicle camera; dispatch service; required vehicle permit; on and off-duty signage for the front windshield; Yellow Checker Cab receipt books; Yellow Checker Cab business cards; interior signage, including posted rates and reminders about personal items; map book; Yellow Checker Cab zone maps; trip sheets; cheat sheets for operating equipment; and insurance. [144] In addition, GSTC provided Mr. Hamed with: training on use of the equipment in his taxicab; orientation training; safety training; defensive driving training;[145] and on-the-road training in the use of the equipment.[146] GSTC also provided Mr. Hamed with instruction, policies, and procedures on: the best places and times for finding customers; driver behavior, personal grooming, and appearance; vehicle cleanliness; how to help passengers enter and exit the taxicab; how to load and unload baggage; how to properly handle luggage a customer may leave behind in the taxicab; the rules for driving a taxicab in the City, taxi etiquette, and airport procedures; and when to use the light on top of the vehicle. GSTC instructed Mr. Hamed that: he not change his mind about customers after

---

[141] Id., exhibits 13(Mr. Barnard's May 10, 2006 deposition testimony) and 14 (Mr. Barnard's Aug. 30, 2007 deposition testimony).

[142] Id., exhibit 15 (Mr. Hamed's May 9, 2006 deposition testimony).

[143] Id., exhibit 19 (Mr. Pantoja's Dec. 12, 2007 deposition testimony).

[144] Id., exhibit 13 at 72-73; exhibit 14 at 117; exhibit 15 at 74-81, 99, 142-43, 157; exhibit 19 at 35-36, 63.

[145] The McClures contend GSTC actually failed to provide Mr. Hamed with defensive driving training prior to the accident, a contention relevant to the McClures' claim of negligent training and supervision. Docket no. 44 at 11.

[146] Id., exhibit 13 at 74, 96-97; exhibit 15 at 67-68; exhibit 19 at 38.

accepting their fares; he take the shortest route to a destination; and as a day lease driver, he check in everyday to provide GSTC with information for tracking his mileage. GSTC additionally provided instruction on: the manner for handling and reporting accidents; the need for post-accident drug testing; and the way to handle a mugging, drive the taxicab, and "perform the job as a taxicab driver."

With respect to the third factor, as discussed in the report, the evidence shows Mr. Hamed could not: drive a taxicab for another company; add or change anything on the taxicab without GSTC's permission; display his name, telephone number, website, or any personal advertisement on the taxicab; allow someone else to drive the taxicab; leave the City limits in the taxicab without informing GSTC; use GSTC's trade name in advertising; use a dispatch system other that GSTC's; install safety equipment without permission; display his name or telephone number inside the taxicab; or behave in a manner detrimental to GSTC's good will.[147] GSTC implemented policies to prevent and correct driver violations of the City's ordinances and regulations.[148] GSTC retained the right to, and did, terminate Mr. Hamed's contract for presenting an unreasonable risk of harm to passengers or others.[149] GSTC controlled communications between passengers and drivers to let passengers know when their taxi is waiting or to let drivers know a passenger left something in the vehicle.[150] Credit card transactions are handled by GSTC.[151]

---

[147] Id., exhibit 14 at 97-98, 100; exhibit 15 at 88, 93-96.

[148] Id., exhibit 14 at 51-53.

[149] Id., exhibit 13 at 76; exhibit 14 at 110-11, 113-15.

[150] Id., exhibit 19 at 60-61, 89-90.

[151] Id. at 94-95.

Additionally, as explained in the report, drivers are tracked with the GPS, an on-board taxicab terminal computer, and GSTC's main frame computer for the following events: when a driver books on and off to start and stop working; every time a passenger is picked up and dropped off; the routes the driver takes for each trip; and the length of time the meter is on for each trip.[152] GSTC reports to the City monthly the number of trips, miles driven, and revenue generated by each of its drivers.[153] GSTC has the ability to monitor the duration of trips to determine if a driver might be driving too fast.[154] GSTC monitors "rapid meters," which occur when a driver forgets to start the meter after picking up a passenger; when GSTC questions such action, the driver is required to provide a response through the dispatch equipment.[155]

Further, GSTC prioritizes and allocates customers to drivers based on a driver's geographic proximity to the customer, the driver's current availability, and the length of time drivers have been logged in to a particular zone. [156] GSTC maintains records about a driver's attributes, such as whether the driver speaks Spanish, and when a customer specifies a particular need, offers the trip to the first available driver with the corresponding skill.[157] In a "Statement of Public Convenience and Necessity," GSTC has stated it "is the dominant provider of dispatched taxi service in San Antonio. . . . provid[ing] approximately 6,000 trips per day, 4,500 [or seventy-five percent] of which

---

[152] Id., exhibit 13 at 86-85; exhibit 15 at 146; exhibit 19 at 52-58.

[153] Id., exhibit 25 (Mar. 2006 monthly operational report).

[154] Id., exhibit 19 at 55-57.

[155] Id. at 86-89.

[156] Id., exhibit 14 at 180-82; exhibit 19 at 47-48, 81-82.

[157] Id., exhibit 19 at 98-100.

are dispatched.[158] Mr. Pantoja testified that he believed most fares are generated through GSTC's dispatch system and he was not aware of a new driver who had started with existing regular customers.[159] According to the evidence, as a new driver Mr. Hamed did not have regular customers and relied on GSTC's dispatch system for most of his passengers as well as for information about the trips, including identification of appropriate map book pages.[160] Mr. Hamed was prohibited from accessing other dispatch services.[161] Mr. Hamed had been driving for GSTC for nine days at the time of the accident, could not remember if he was dispatched to pick up Lynn McClure, and knew Ms. McClure's hotel was a "hot spot" identified by GSTC.[162] Mr. Barnard testified that in the first nine days of Mr. Hamed's contract with GSTC, he assumed the majority of Mr. Hamed's fares would come through the company.[163]

Under the circumstances, this Court agrees with the Magistrate Judge the McClures have raised a genuine issue of material fact as to whether, contrary to the intent of the agreement, GSTC actually exercised control over Mr. Hamed's work at the time of the accident. As set forth in the report:

> As GSTC asserts, some evidence which the McClures submitted concerns requirements imposed on GSTC by City Ordinance, such as requirements to provide a dispatch system and insurance on all vehicles as well as to specify the manner of

---

[158] Id., exhibit 24 at bates no. 00042.

[159] Id., exhibit 19 at 48, 58-59.

[160] Id., exhibit 15 at 98-100.

[161] Id., exhibit 14 at 96.

[162] Id., exhibit 15 at 100, 103.

[163] Id., exhibit 14 at 100.

31

dress and appearance of the drivers.[164] However, the evidence suggests more than GSTC's mere compliance with the City Ordinance and regulations. Although the evidence relevant to the first, fourth, and fifth right to control factors is not inconsistent with the intent of the agreement between Mr. Hamed and GSTC that Mr. Hamed work as an independent contractor, each of the factors need not be present to make a finding on right to control. The McClures have submitted extensive evidence with respect to the second and third factors showing GSTC's control over Mr. Hamed's work, including but not limited to evidence showing: GSTC provided Mr. Hamed with the equipment, training, and instruction necessary to perform his work; GSTC regularly monitored its drivers, including Mr. Hamed; and Mr. Hamed relied on GSTC's dispatch system for fares at the time of the accident. Construing the evidence and resulting inferences in the McClures' favor, as nonmovants, a reasonable fact finder could believe Mr. Hamed was an employee of GSTC at the time of the accident, and not an independent contractor.[165]

Accordingly, GTSC's objections to the finding that the McClures have submitted evidence raising a genuine issue of material fact that GSTC actually exercised control over much of Mr. Hamed's work such that he was not an independent contractor at the time of the accident are overruled.

B.    Direct Liability: Negligent Training

The McClures have alleged that GSTC is liable for its negligent training and supervision of Mr. Hamed. GSTC argues it had no such duties because Mr. Hamed was an independent contractor.[166] GSTC asserts that "in any event, the evidence demonstrates that GSTC did, in fact,

---

[164] See docket no. 34, tab B at §§ 33-018, 33-056, 33-971(a); see also Bell v. VPSI, Inc., 205 S.W.3d 706, 714 (Tex. App.–Fort Worth 2006, no pet) (explaining that requiring contractor to "comply with applicable laws, regulations and safety requirements that relate to the performance of a contract [] do not constitute evidence that the employer controls the details of how the worker performs his job"); see also Tirres, 808 S.W.2d at 676 (working under required state permit issued to employer dictating certain requirements did not alter independent contractor status). .

[165] See INA of Tex., 808 S.W.2d at 294 (holding evidence supported jury finding that repairer was employee were, in part, he owned his own truck but company supplied all "hand tools, tubes, patches, and tires; repairer had to report to dispatcher each morning for instructions; when in the employer's service, repairer did not work for others; order in which he did his work was specified; and he was corrected for mistakes); Shaw v. Greater Houston Transp. Co., 791 S.W.2d 204, 210-11 (Tex. App.–Corpus Christi 1990, no writ) (holding trial court erred in granting judgment notwithstanding verdict that taxicab driver was independent contractor because evidence showed driver was required to complete application form before driving, customers were dispatched through employer, agreement to drive had to be renewed every 24 hours, employer provided insurance and maintenance, all of which was "some evidence both to allow submission of the issue [of whether driver was employee] and to support the jury's answer").

[166] Docket no. 35 at 14-15.

32

train Hamed, and plaintiffs can produce no evidence that GSTC's training and supervision were deficient."[167]

The McClures argued in response, in sum, that as a genuine issue of material fact exists that Mr. Hamed was an independent contractor at the time of the accident, GSTC's argument that it had no duty to train must fail. [168] In addition, the McClures submitted evidence showing GSTC's president admitted a duty to train whether the drivers are employees or independent contractors.[169] The McClures assert "the evidence shows Defendant failed to provide Hamed with the requisite training."[170] Specifically, the McClures contended GSTC failed to provide Mr. Hamed with required defensive driving training.[171]

GSTC replied that the McClures have admitted Mr. Hamed was provided with training, an argument they relied on in asserting vicarious liability.[172] To the extent the evidence shows GSTC had not provided Mr. Hamed with defensive driving training at the time of the accident, GSTC argued that pursuant to the requirements of the City Ordinance, such training was to be provided within thirty days of employment and Mr. Hamed "was within that time when the accident

---

[167] Id. at 15.

[168] Docket no. 44 at 17.

[169] Id.

[170] Id.

[171] Id. at 18. The McClures also contend GSTC failed to test whether he was a safe driver. Id. This contention will be addressed below with the arguments relative to the negligent hiring and retention claim.

[172] Docket no. 53 at 4.

occurred."[173] GSTC asserted the McClures have presented no evidence to show "defensive driving was required to 'ensure' Hamed was a safe driver."[174]

As part of the analysis, the Magistrate Judge explained, under Texas law, an employer who retains an independent contractor generally has no duty ensure the contractor performs its work safely, unless the employer retained contractual or actual control over the contractor.[175] In this case, because there is a genuine issue of material fact that GSTC actually exercised control over Mr. Hamed's work at the time of the accident such that he was not an independent contractor, the Magistrate Judge found that GSTC is not entitled to summary judgment on its argument that it had no duty to train Mr. Hamed. Moreover, as set forth by the Magistrate Judge, § 33-054 of the City Ordinance imposed the following duty on GSTC:

> Every holder operating a ground transportation service in the city shall employ or contract as drivers only persons who are physically and mentally fit and <u>who have sufficient experience and training to operate a vehicle in a safe and proper manner</u>.[176]

In this case, as set forth in the report, Mr. Barnard agreed that pursuant to this provision, GSTC was responsible for the fitness of the drivers and was obligated to ensure drivers had the proper experience and training to safely operate the taxicabs.[177] Given GSTC's admitted obligation to ensure that its drivers were properly trained to safely operate the taxicabs, the Magistrate Judge

---

[173] Id.

[174] Id.

[175] See Fifth Club, Inc. v. Ramirez, 196 S.W.3d 788, 791 (Tex. 2006).

[176] Docket no. 34, tab B at § 33-054(a) (emphasis added).

[177] Docket no. 44, exhibit 14 at 54-55.

found that the McClures must present evidence to raise genuine issues of material fact that GSTC breached the duty and the breach proximately caused Lynn McClure's injuries.[178]

The Magistrate Judge found the McClures have failed to meet this burden. The report therefore recommends GSTC's motion for partial summary judgment be granted on plaintiffs' direct liability clam against GSTC for negligent training.

1.    Plaintiffs' Objections

The McClures object to the finding that they have failed to raise genuine issues of material fact on their direct liability clam against GSTC for negligent training. They argue in sum that "defendant failed from the outset to ensure [Mr.] Hamed was a safe driver and failed to provide him with the required defensive driving training that all of its drivers go through before receiving keys to a taxicab." Moreover, plaintiffs' argue, "defendant's President admits his company has a duty to ensure that drivers have 'sufficient experience and training to operate a vehicle in a safe and operating manner' and that to this end his company is required to provide drivers with defensive driving."

As discussed in the report, the evidence shows Mr. Hamed had not been provided with defensive driving training at the time of the accident.[179] However, as discussed by the Magistrate Judge, § 33-041 of the City Ordinance specifies drivers must complete such training "within thirty (30) days of employment or the previous twelve (12) months" and pass a test administered by the

---

[178] See Greater Houston Transp., 801 S.W.2d at 525.

[179] Docket no. 44, exhibit 14 at 115.

City's director of ground transportation,[180] and the thirty day period had not expired at the time of the accident.

The McClures have submitted Mr. Pantoja's testimony that in 2001, when he was trained as a new driver, he attended a defensive driving training course before he was given "on-the-road training."[181] Mr. Pantoja testified he believed, but was uncertain, that GSTC's procedure in 2006 was basically the same as in 2001, and all drivers received defensive driving training before he trained them in the use of the equipment. [182] As noted by the Magistrate Judge, although this evidence suggests GSTC may have deviated from its internal procedures when it hired Mr. Hamed, the McClures have cited no authority showing such a deviation constitutes a breach of the duty to provide Mr. Hamed with defensive driving training within thirty days of his employment. Nor have the McClures presented evidence suggesting the accident would not have occurred "but for" GSTC's failure to follow its internal procedure. Accordingly, this Court agrees with the Magistrate Judge that the McClures have failed to raise a genuine issue of material fact that GSTC breached its duty to provide defensive driving training or that such breach was the proximate cause of Lynn McClure's injuries. Plaintiffs' objections to the recommendation that GSTC be granted summary judgment on plaintiffs' negligent training claim are therefore overruled.

IT IS THEREFORE ORDERED that the [Second] Report and Recommendation of the United States Magistrate Judge (docket no. 89) is ACCEPTED pursuant to 28 U.S.C. § 636(b)(1) such that GSTC's motion for partial summary judgment (docket no. 35) is GRANTED in part and

---

[180] Docket no. 34, tab B at § 33-041(b)(12) & (13).

[181] Docket no. 44, exhibit 19 at 26-27.

[182] Id. at 30-31.

DENIED in part. Specifically, GSTC's motion is GRANTED on the McClures' claims for vicarious liability under the theory of joint enterprise, negligent maintenance of the taxicab's tread depth and air pressure, negligent training and supervision, negligent entrustment, and negligent hiring and retention, and these claims are DISMISSED; and DENIED on the McClures' claims of vicarious liability under the theories of respondeat superior–employee, respondeat superior–nonemployee, agency and branded vehicle doctrine. Because this Court has accepted this report and the recommendations in the companion [First] Report and Recommendation (docket no. 88) issued on September 25, 2008, on the McClures' motion for partial summary judgment, all claims against Mr. Hamed as well as the claims against GSTC for vicarious liability under the theories of respondeat superior–employee, respondeat superior–nonemployee, agency, and branded vehicle doctrine remain pending for further disposition.

It is so ORDERED.

SIGNED this ___24th___ day of March, 2009.

FRED BIERY
UNITED STATES DISTRICT JUDGE