IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION



FILED

MAR 2 4 2009

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

LYNNE McCLURE, PATRICK          )
McCLURE, and SHAWN McCLURE,     )
                                )
        Plaintiffs,             )
                                )
vs.                             )        CIVIL ACTION NO. SA-08-CA-112-FB
                                )
GREATER SAN ANTONIO             )
TRANSPORTATION COMPANY d/b/a    )
Yellow Checker Cab, and         )
ABUBAKR HAMED,                  )
                                )
        Defendants.             )

<u>**ORDER AFFIRMING MAGISTRATE JUDGE'S ORDER OF OCTOBER 3, 2008**</u>

Before the Court are Plaintiffs' Objections to Magistrate Judge's Order on Plaintiffs' Motion

to Exclude the Testimony of Charles Benedict, PH.D., P.E. (docket no. 100) and defendant Greater San

Antonio Transportation Company's response (docket no. 110). The Magistrate Judge entered an Order

(docket no. 96) on October 3, 2008, which granted in part and denied in part plaintiffs' motion to

exclude the testimony of Dr. Charles Benedict. Plaintiffs appeal from the portion of the Order (docket

no. 96) which denies in part their motion to exclude. The standard of review for matters decided by a

Magistrate Judge and appealed to the District Court is found in rule 72(a) of the Federal Rules of Civil

Procedure. FED. R. CIV. P. 72(a). Rule 72(a) provides in part:

> The district judge in the case must consider timely objections and modify or set aside
> any portion of the order that is clearly erroneous or contrary to law.

<u>Id.</u>; <u>see also</u> W. DIST. LOC. R. app. C, 4(a) (Citing 28 U.S.C. § 636(b)(1)(A) which provides "A judge

of the court shall consider the appeal and shall set aside any portion of the magistrate judge's order

found to be clearly erroneous or contrary to law."). A party has ten days to appeal from an order of a

Magistrate Judge. Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the order within ten days after being served with a copy."); W. Dist. Loc. R. app. C, 4(a) (citing 28 U.S.C. § 636(b)(1)(A) which provides that an appeal from a Magistrate Judge's order shall be made "within 10 days after issuance" of the order from which the appeal is made). In this case, plaintiffs' objections were filed within the ten-day limit for filing a notice of appeal from the October 3, 2008 decision of the Magistrate Judge. The appeal is therefore timely filed. However, after careful consideration, the Court finds the portion of the Order from which plaintiff appeals to be neither clearly erroneous nor contrary to law.

As set forth in the Order from which plaintiffs appeal, the Magistrate Judge considered: (1) the motion to exclude the testimony of Dr. Charles Benedict, Ph.D., P.E., filed by plaintiffs Lynne McClure, Patrick McClure, and Shawn McClure (collectively, "the McClures" or "plaintiffs"); [1] (2) the sealed response of defendant Greater San Antonio Transportation Company d/b/a Yellow Checker Cab ("GSTC," or, at times, "Yellow Checker Cab");[2] (3) the response of Abubakr Hamed ("Mr. Hamed");[3] (4) plaintiffs' reply;[4] (5) GSTC's opposed motion for leave to file a sur-reply with attached sur-reply;[5] and (6) plaintiffs' response to the opposed motion.[6]

---

[1] Docket no. 72 (filed Aug. 20, 2008).

[2] Docket no. 77 (filed Aug. 29, 2008).

[3] Docket no. 84 (filed Sept. 10, 2008). Mr. Hamed states in his two-page response that he "adopts and incorporates the arguments and the supporting exhibits and evidence submitted by [GSTC] in its response[.]" Id. at 1.

[4] Docket no. 82 (filed Sept. 8, 2008).

[5] Docket no. 86 (filed Sept. 25, 2008).

[6] Docket no. 87 (filed Sept. 25, 2008).

A.     Procedural History and Factual Allegations

As set forth in the Order, this case was initiated on February 12, 2008, when plaintiffs filed their original complaint and demand for jury trial against defendants GSTC and Mr. Hamed (collectively, "defendants").[7]  The original complaint primarily concerns injuries Lynne McClure sustained during a motor vehicle accident that occurred on March 19, 2006, when she was a passenger in a Yellow Checker Cab driven by Mr. Hamed.  Mr. Hamed filed his original answer on March 4, 2008,[8] and GSTC filed its original answer and demand for jury trial on March 14, 2008.[9]

This Court referred this case to the Magistrate Judge for pretrial management on July 1, 2008.[10] On July 2, 2008, the McClures filed, and the undersigned granted, a motion for leave to amend their original complaint.[11]  The first amended complaint alleges defendants are common carriers "having a duty to exercise that high degree of care that a very cautious, competent, and prudent person would use for the safety of its passengers, like Dr. Lynne McClure."[12]  The amended complaint asserts GSTC is estopped by contract from denying its status as a common carrier.[13]  In addition, against Mr. Hamed, the amended complaint alleges claims for negligence and negligence per se, relating in sum, to the manner in which he drove and handled the taxicab at the time of the accident and his alleged failure to

---

[7]   Docket no. 1.

[8]   Docket no. 6.

[9]   Docket nos. 11 and 12.

[10]   Docket no. 40.

[11]   Docket no. 41 and 42.

[12]   Docket no. 43 at 4.

[13]   Id. at 4-7.

comply with certain provisions of the Texas Transportation Code.[14] Against GSTC, the amended complaint alleges claims for: negligent maintenance of the taxicab; negligent entrustment; "negligent hiring, retaining, recommending, sponsoring, and promoting Defendant Hamed;" vicarious liability under the theories of respondeat superior–employee, branded vehicle doctrine, joint enterprise, agency, respondeat superior–nonemployee, and non-delegable duty of common carrier; and spoliation of evidence.[15] As relief, the McClures are seeking damages for: (1) Lynne McClure – medical expenses of $850,000.00 in the past and $4,000,000.00 in the future as well as physical pain, mental anguish, impairment, and disfigurement, all past and future; (2) Patrick McClure – loss of spousal consortium and loss of household services, both past and future; and (3) Shawn McClure – loss of parental consortium, past and future.[16]

On June 6, 2008, Mr. Hamed filed a motion for leave to designate responsible third parties,[17] and GSTC subsequently filed a similar motion.[18] After responses and replies were filed to each motion,[19] the undersigned granted leave to designate DaimlerChrysler Corporation,[20] Williams Brothers Construction, Inc., the Texas Department of Transportation, T.D.A., Inc. and Jesus Guillen as responsible third-parties.[21]

---

[14] Id. at 7-8.

[15] Id. at 8-14

[16] Id. at 15.

[17] Docket nos. 23 and 28.

[18] Docket no. 39 (filed Jun. 24, 2008).

[19] Docket nos. 30, 33, 45.

[20] On October 3, 2008, the McClure's filed a motion to strike the designation of DaimlerChrysler as a responsible third party. Docket no. 91.

[21] Docket nos. 48 and 49 (Jul. 10, 2008) and docket no. 50 (Jul. 14, 2008).

B.    Motion to Exclude Testimony: Summary of Arguments

Defendants GSTC and Mr. Hamed have designated DaimlerChrysler Corporation ("DaimlerChrysler") as a responsible third party and have designated Dr. Charles Benedict ("Dr. Benedict"), Ph.D., P.E., as an expert to testify that the DaimlerChrysler taxicab involved in the accident has design defects in the passenger-side sliding door, the door latch, and seatbelt restraint system.[22] The McClures moved to exclude Dr. Benedict's testimony and opinion, contending a review of his "report and file materials quickly reveals that Benedict's analysis, methods, and opinions fall well short of the requisite reliability standards required by Daubert and its progeny."[23] In particular, the McClures challenged Dr. Benedict's opinions regarding the sliding door and door locks because they are based on crash tests "completely dissimilar to the collision at issue and the purported alternate designs are vague, untested conceptualized ideas." Further plaintiffs challenged any opinion of Dr. Benedict regarding the seatbelt because: Dr. Benedict has not opined that Lynne McClure was secured by a seat belt at the time of the accident; has not identified the methodology, testing, or calculations underlying his opinions; the purported alternative design is vague and not based on scientific testing; and the videotape of a seatbelt inadvertently unlatching is an "parlor trick"[24] that is irrelevant and unreliable, given Dr. Benedict's assessment of the experiment depicted in the video. Finally, plaintiffs challenged Dr. Benedict's opinions regarding whether the alternative designs would have prevented Lynne McClure's injuries on the ground Dr. Benedict is not a medical doctor, has no formal medical training,

---

[22]   Docket no. 72 at 7; docket no. 77 at 1-2.

[23]   Docket no. 72 at 2.

[24]   Id. at 15.

and is not qualified to render medical causation opinions.[25]  The McClures requested an evidentiary

hearing on the motion to exclude.[26]

In response, defendants argued Dr. Benedict's opinions regarding the sliding doors and door

locks are based on crash tests that are substantially similar to the accident and on alternative designs

existing in the marketplace.  Further, defendants argued Dr. Benedict's opinions regarding the seatbelts

constitute evidence Lynne McClure was not secured by a seat belt at the time of the accident and are

based on safer alternative designs readily available and in use at the  relevant time.[27]  With respect to

whether Dr. Benedict is qualified to render any opinion on medical causation, defendants argued, "Dr.

Benedict does not purport to opine with regard to medical issues, but rather his opinion relates to

biomechanics, i.e., analyzing the forces on the body that cause injury by relating origin, direction and

magnitude of the forces acting on the body to determine where the forces come from and why."   [28]

Finally, defendants argued an evidentiary hearing on the motion to exclude is not necessary based on

Dr. Benedict's report and affidavit.   Defendants contended plaintiffs' request for a hearing "appears

to be little more than a thinly-veiled attempt to depose Dr. Benedict in open court to avoid paying his

fees and expenses."[29]

In reply, plaintiffs argued that Dr. Benedict's opinions concerning the sliding door and door

latches are unreliable because they are based on testing relevant to "unlatching" when this is an

"intrusion" case, and "without additional testing and dynamic force calculations to fill the analytical gap

---

[25]  Id. at 7-18.

[26]  Id. at 18.

[27]  Docket no. 77 at 4-10.

[28]  Id. at 11.

[29]  Id. at 13.

connecting the alleged unlatchment to the intrusion of the door into the vehicle that purportedly struck Lynne McClure," defendants' reliance on possible unlatching "is fatally misplaced."[30] In addition, the McClures argued Dr. Benedict has not discussed the contradiction between the New Car Assessment Program ("NCAP") testing on which he relied and the actual accident or the testimony of defendants' own accident reconstruction expert that the NCAP testing was different than the actual accident.[31] Further, plaintiffs argued Dr. Benedict has not explained the differences, or the effects of the differences, in the testing and the actual collision, or shown that alternate designs would have prevented the sliding door from intruding into the taxicab.[32] The McClures contended Dr. Benedict's affidavit regarding the restraint system "consists of circular opinions that are based solely on each other."[33] Further, the McClures argued Dr. Benedict has testified in other cases that he does not provide biomechanical testimony, and defendants have not shown he is qualified to express such opinions.[34]

Defendant GSTC filed an opposed motion for leave to file a sur-reply to "address misrepresentations" the McClures have asserted.[35] The Magistrate Judge noted there is no provision in the local rules for the filing of a sur-reply; indeed, under the local civil rules of this Court, the filing of even a reply is discretionary. Further, the Magistrate Judge found GSTC's opposed motion for leave to file a sur-reply was not timely filed, as it was filed approximately seventeen days after the McClures filed their reply in support of the motion to exclude. Nevertheless, the Magistrate Judge fully

---

[30] Docket no. 82 at 3 (emphasis in original).

[31] Id. at 3-4.

[32] Id.

[33] Id. at 4.

[34] Id. at 5.

[35] Docket no. 86 at 1.

considered GSTC's sur-reply to the extent it provides additional information concerning matters addressed in this Order, specifically, Dr. Benedict's affidavit testimony regarding the seatbelt restraint system in the 2004 Dodge Caravan. [36] In an abundance of caution, the Magistrate Judge wished to consider all argument and evidence submitted or proffered by GSTC on the matter, as the Magistrate Judge's ruling on the issue is adverse to GSTC; at the same time, as the matters in the tendered sur-reply considered by the Magistrate Judge were only matters relating to a ruling adverse to GSTC, the Magistrate Judge found plaintiffs' request to file a reply to the sur-reply[37] is moot.

In the sur-reply, GSTC argued, in sum, that the McClures have misrepresented: the testimony of GSTC's accident reconstruction expert; the seatbelt evidence; and Dr. Benedict's qualifications as well as mischaracterized the NCAP test.[38] In particular, regarding the McClures' challenge to Dr. Benedict's opinion that Ms. McClure was not wearing a seatbelt at the time of the accident, GSTC argued the McClures have attempted to discredit the hospital records they produced which indicate "her doctors specifically noted the absence of seatbelt marks and classified her as an 'Unrestrained Passenger.'"[39] GSTC asserted "the presence, or absence, of seatbelt bruises is an accepted method of assessing seatbelt use at the time of an accident."[40]

C.   Daubert, FED. R. EVID. 702, 703, and 403

The Magistrate Judge in the Order discussed the principles relevant to a challenge to the qualifications of an expert. As set forth in the Order, the Federal Rules of Evidence permit the use of

---

[36]   Docket no. 86, attached sur-reply, exhibits 3, 7, 8.

[37]   Docket no. 87 at 2.

[38]   Docket no. 86, sur-reply at 1-5.

[39]   Id. at 4.

[40]   Id.

expert testimony when such testimony will assist the trier of fact to understand the evidence or to determine a fact in issue.[41] A witness may be an expert by virtue of his or her knowledge, skill, experience, training or education. In giving testimony, an expert may rely on three types of facts or data: those perceived directly by the expert before trial, those made known to the expert during the trial, and those made known to the expert before trial and based on something other than the expert's own perceptions.[42] If the evidence relied upon by the expert is inadmissible, then it must be data that is "reasonably relied upon by experts in the particular field."[43] In addition, a trier of fact must determine whether there are good grounds to rely on this data to draw the conclusion reached by the expert.[44]

As discussed in the Order, in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, the United States Supreme Court set forth a two-pronged test for the admission of scientific expert testimony: is the expert opinion based on scientific method and is there a "fit" between the expert testimony and the disputed issues in the case.[45] The Supreme Court held that expert scientific testimony must be "ground[ed] in the methods and procedures of science" and based on "more than a subjective belief or unsupported speculation."[46] The Supreme Court explained that proposed testimony must be supported

---

[41] FED. R. EVID. 702.

[42] <u>See</u> FED. R. EVID. 703.

[43] Rule 104, F ED. R. EVID., allows the Court to consider inadmissible evidence when making its <u>Daubert</u> ruling.

[44] <u>In re Paoli R.R. Yard PCP Litigation</u>, 35 F.3d 717, 749 (3d Cir. 1994).

[45] 509 U.S. 579, 593, 113 S.Ct. 2786, 2797 (1993). <u>See also</u> <u>General Elec. Co. v. Joiner</u>, 522 U.S. 136, 146, 118 S.Ct. 512, 519 (1997) ("Trained experts commonly extrapolate from existing data. But nothing in either <u>Daubert</u> or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the <u>ipse dixit</u> of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

[46] <u>Daubert</u>, 509 U.S. at 590, 113 S.Ct. at 2795.

by appropriate validation, that is, "good grounds," based upon what is known.[47] To be admissible under the <u>Daubert</u> standard, an expert's opinion must have a "reliable basis in the knowledge and experience of his discipline."[48]  <u>Daubert</u> set forth a nonexclusive list of factors for the Court to consider in analyzing scientific expert evidence.

Accordingly, as discussed by the Magistrate Judge, the United States Court of Appeals for the Fifth Circuit requires trial courts to "determine that the reasoning and methodology underlying a proffered expert opinion are scientifically valid and that the reasoning and methodology were applied properly to the facts in issue."[49]  In <u>Allen v. Pennsylvania Engineering Corp.</u>, the Fifth Circuit held that for every conclusion contained in the expert's proposed testimony, the Court must determine if the methodology leading to that conclusion is sound.[50]  In the case of non-scientific expert testimony, <u>Daubert</u> applies even though each of the factors outlined in <u>Daubert</u> for determining the reliability of expert testimony may not be applicable to every such case.  Nevertheless, the Court must exercise its gatekeeping function to ensure that expert testimony based on experience and training is reliable.[51]

---

[47]  <u>Id.</u>; <u>see</u> <u>Allen v. Pennsylvania Eng'g Corp.</u>, 102 F.3d 194, 196 (5th Cir. 1996).

[48]  <u>Daubert</u>, 509 U.S. at 592, 113 S.Ct. at 2796; <u>see</u> <u>Allen</u>, 102 F.3d at 196.

[49]  <u>Allen</u>, 102 F.3d at 106 (citing <u>Daubert</u>, 509 U.S. at 592-93, 113 S.Ct. at 2796).

[50]  102 F.3d at 196.

[51]  In <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 119 S. Ct. 1167 (1999), the Supreme Court resolved a split among the circuits to make it clear that the <u>Daubert</u> "gatekeeping" function applied to all expert opinion testimony based on specialized knowledge, not merely scientific expert testimony. The Fifth Circuit had previously held that <u>Daubert</u> applies to expert testimony based on engineering principles and practical experience.  <u>Watkins v. Telsmith, Inc.</u>, 121 F.3d 984, 988 (5th Cir. 1997).

As explained in the Order, Rule 702, FED. R. EVID., has codified the holdings in <u>Daubert</u> and <u>Kumho Tire Co.</u> by expressly providing that if scientific, technical or specialized knowledge will assist the trier of fact, a qualified witness may testify in the form of an opinion if:

(1)     the testimony is based upon sufficient facts or data,

(2)     the testimony is the product of reliable principles and methods, and;

(3)     the witness has applied the principles and methods reliably to the facts of the case.[52]

The advisory committee notes state that prong (1) is "quantitative" rather than "qualitative" – the expert must be relying on sufficient facts or data – and prongs (2) and (3) are "qualitative." In reviewing a <u>Daubert</u> challenge, the Court does not decide credibility, only whether the threshold reliability standards have been satisfied. <u>Daubert</u> standards apply not merely at trial, but also on summary judgment. "For the purposes of summary judgment . . . an expert affidavit must include materials on which the expert based his opinion, as well as an indication of the reasoning process underlying the opinion."[53]

Rule 403 requires a court to consider the probative value of the expert testimony in relation to circumstances such as the danger of unfair prejudice, confusion of the issues, misleading the jury, or waste of time. The proponent of the expert testimony is required to demonstrate by a preponderance of the evidence that the expert's findings and conclusions are reliable.[54]

---

[52]     FED. R. EVID. 702.

[53]     See <u>Michaels v. Avitech, Inc.</u>, 202 F.3d 746, 754 (5th Cir. 2000), <u>cert. denied</u>, 531 U.S. 926, 121 S.Ct. 303 (2000) (citing <u>Boyd v. State Farm Ins. Co.</u>, 158 F.3d 326, 331 (5th Cir. 1998)); <u>see also Daubert</u>, 509 U. S. at 596, 113 S. Ct. at 2798.

[54]     <u>Moore v. Ashland Chem., Inc.</u>, 151 F.3d 269, 276 (5th Cir. 1998) (en banc), <u>cert. denied</u>, 526 U.S. 1064, 119 S.Ct. 1454 (1999).

D.    The Findings of the Magistrate Judge

Recognizing the Court's gatekeeping function, the Magistrate Judge found the motion should be granted in part and denied in part. The Magistrate Judge determined the proponents of the testimony have demonstrated by a preponderance of the evidence that Dr. Benedict is qualified to testify as an expert that: the sliding doors and door latches on the 2004 Dodge Caravan were inherently defective and unreasonably dangerous based on NCAP testing; had NCAP testing been performed on the passenger-side sliding door, the impact would have crushed the door into the right middle occupant as in the accident at issue; DaimlerChrysler failed to perform a proper FMEA on the 2004 Dodge Caravan following the NCAP testing; and economical alternative designs were available for sliding doors and latches at the time the 2004 Dodge Caravan was manufactured. The Magistrate Judge found Dr. Benedict is also qualified to testify on the biomechanics and injury causation of the accident. The Magistrate Judge further found, with respect to the noted opinions, Dr. Benedict's specialized knowledge will assist the jury in understanding the evidence and disputed issues. The Magistrate Judge also determined that the opinions and proposed testimony are sufficiently reliable, that is, specifically, Dr. Benedict's expert opinions and proposed testimony are based upon sufficient facts, the testimony is the product of reliable principles and methods, and the witness has applied reliably the principles and methods to the facts of this case. The Magistrate Judge additionally considered the "fit" of the evidence to the issues in this case when making this ruling. The Magistrate Judge further found that Dr. Benedict's testimony on the noted matters is sufficiently reliable to assist the trier of fact in deciding an issue in the case and its probative value outweighs any potential for confusion, unfair prejudice, and waste of time. The weight to be afforded the expert opinions, the Order determined, will thus be a matter for the finder of fact.

On the other hand, the Magistrate Judge found, defendants, the proponents of Dr. Benedict's testimony, have not shown the relevance of Dr. Benedict's opinions regarding the 2004 Dodge Caravan's seatbelt restraint system or the videotaped test for inadvertent unlatching of the seatbelt. In this regard, the McClures challenged:

• Dr. Benedict's "extremely vague and unclear" opinion "regarding Mrs. McClure's seatbelt usage at the time of the collision;"[55]

• Dr. Benedict's opinion that the taxicab's seatbelt restraint system was inherently defective and unreasonably dangerous because the webbing could twist, causing the webbing to act like a rope instead of a flat surface during an accident, asserting the opinion is unreliable as it lacks a factual or scientific basis;[56]

• Dr. Benedict's opinion that an alternative seatbelt restraint system design was available that would have cost DaimlerChrysler nothing to implement, asserting the opinion is vague and not based on scientific testing;[57] and

• Dr. Benedict's reference to a videotape purported to show inadvertent seatbelt unlatching, asserting the videotape has "zero relevance" and is unreliable by Dr. Benedict's own admission.[58]

As set forth by the Magistrate Judge, Dr. Benedict opines in his report that had Ms. McClure "been wearing the available restraint she would have also received internal abdominal forces that would have caused injuries to her abdomen, liver, and lumbar areas."[59] Dr. Benedict also testifies that he relied on hospital records showing the absence of seatbelt marks on Ms. McClure's body after the accident,[60] and that "[i]n addition to using medical records to determine belt usage," the methodology in accident

---

[55] Docket no. 72 at 13.

[56] Id. at 14.

[57] Id. at 14-15.

[58] Id. at 15-16.

[59] Id., exhibit 1 at ¶ 15.

[60] Docket no. 86, sur-reply at exhibit 3, ¶¶ 11-12.

reconstruction is to "analyze physical evidence because it is the actual physical remnants of the accident" which is why he "analyzed the injuries to Dr. McClure to determine if the typical seatbelt injuries were present or not and as I stated previously, there was no such evidence."[61]

The Magistrate Judge determined the essence of Dr. Benedict's opinion on this issue is that Ms. McClure was not wearing a seatbelt at the time of the accident. Further, the Magistrate Judge noted, Dr. Benedict opines Ms. McClure "would have suffered the same forces on her body with or without the restraint."[62] Therefore, the Magistrate Judge found, defendants have not demonstrated the following opinions of Dr. Benedict are relevant:

• The seatbelt restraint system in the 2004 Dodge Caravan is inherently defective and unreasonably dangerous because the seatbelt webbing "can become twisted in normal and foreseeable use causing it to lose its critical force distribution feature where it can cause severe injuries or even death during foreseeable accidents such as the subject accident;"[63]

• Twisting causes the "webbing to act like a rope instead of a flat surface" that "allows the load to be spread over a large area of the occupant's body;"[64] and

• Alternative designs were available.[65]

Moreover, as discussed in the Order, the McClures strenuously argue in their motion to exclude and reply that Dr. Benedict's report does not explain the methodology underlying his opinions regarding the seatbelt restraint system in a 2004 Dodge Caravan. Defendants' sealed response and sur-reply and Dr. Benedict's affidavits fail to respond to plaintiffs' argument. Absent evidence of methodology, the Magistrate Judge determined that the Court cannot determine "'whether the reasoning or methodology

---

[61] Id. at ¶ 12.

[62] Docket no. 72, exhibit 1 at ¶ 14.

[63] Id. at ¶ 12.

[64] Id. at ¶¶ 11.

[65] Id. at ¶ 13.

properly can be applied to the facts in issue'" – the test for determining relevance when an expert's opinions have been challenged under Daubert.[66] Regarding Dr. Benedict's reference in his report to the videotaped test for inadvertent seatbelt unlatching and his corresponding affidavit testimony, the Magistrate Judge found that Dr. Benedict has not offered an opinion on whether the taxicab's seatbelt inadvertently unlatched during the accident or otherwise explained how the test might be relevant to the case in another way.

In sum, the Magistrate Judge determined that defendants have not established the relevance of Dr. Benedict's opinions regarding the seatbelt restraint system in the 2004 Dodge Caravan or of the videotaped test for inadvertent unlatching of the seatbelt. As a threshold matter, the Magistrate Judge noted, any evidence, including expert opinion testimony, must be relevant. Because defendants have not demonstrated that the noted opinions of Dr. Benedict are relevant, the Magistrate Judge found the opinions should be excluded. The Magistrate Judge therefore concluded that no further analysis under Daubert and its progeny is required. Additionally, the Magistrate Judge further concluded that no pretrial evidentiary hearing is required to resolve the Daubert challenges raised in this case.

The Magistrate Judge thus granted in part and denied in part plaintiffs' motion to exclude the testimony of Dr. Charles Benedict.[67] The Magistrate Judge further Ordered that GSTC's opposed motion for leave to file a sur-reply[68] was granted in part and denied in part. The Order states: "to the extent matters in the tendered sur-reply addressed matters on which the Court has ruled adversely to defendants, such as arguments in the sur-reply concerning Dr. Benedict's affidavit testimony regarding

---

[66] Knight v. Kirby Inland Marine, Inc., 482 F.3d 347, 352 (5th Cir. 2007) (quoting Daubert, 509 U.S. at 593, 113 S.Ct. at 2796).

[67] Docket no. 72.

[68] Docket no. 86.

the seatbelt restraint system in the 2004 Dodge Caravan, those matters were fully considered; otherwise the request to file the sur-reply is denied on the ground it was untimely filed and GSTC has not demonstrated that matters addressed in the sur-reply could not have been earlier filed or included in its response." Finally, the Magistrate Judge Ordered that "plaintiffs' contingent request for leave to file a reply to the sur-reply[69] is denied as moot; as the only matters addressed in GSTC's sur-reply are those relating to rulings which were adverse to defendants, there appears to be no need for plaintiffs to file a further reply."

Defendants did not object or appeal from the finding that defendants have not established the relevance of Dr. Benedict's opinions regarding the seatbelt restraint system in the 2004 Dodge Caravan or of the videotaped test for inadvertent unlatching of the seatbelt. Plaintiffs, however, object to the portion of the Order which denied plaintiffs' motion to exclude the testimony of Dr. Charles Benedict.

E.    Plaintiffs' Objections

As they did to the Magistrate Judge, plaintiffs argue Dr. Benedict is not qualified nor has he set forth any facts, date, or reliable methodology to support his causation opinions. Plaintiffs also reurge their argument that Dr. Benedict's opinions regarding the right passenger sliding door and door latch are wholly unreliable. As noted in the Order, plaintiffs challenge the reliability of the opinions expressed in Dr. Benedict's report:

• NCAP testing performed by the National Highway Transportation Administration ("NHTSA") showed the sliding doors and door latches of the 2004 DaimlerChrysler Dodge Grand Caravan at issue were inherently defective and unreasonably dangerous, asserting the NCAP testing is "completely dissimilar to the actual collision;"[70]

---

[69]   Docket no. 87 at 2.

[70]   Docket no. 72 at 9.

• Had the NCAP testing been performed on the right-side sliding door, the impact would have crushed the door into the right middle occupant as in the accident at issue, asserting the opinion is rank speculation;[71]

• DaimlerChrysler failed to perform a proper Failure Modes and Effect Analysis ("FMEA") on the 2004 Dodge Grand Caravan following the NCAP testing, asserting there is no evidence to support this opinion;[72] and

• Economically feasible alternative designs for the sliding door and latching system were available, asserting the opinion is vague and unsupported by testing.[73]

As set forth by the Magistrate Judge, with respect to NCAP testing, Dr. Benedict testified by affidavit that: to date, the referenced NCAP tests are the only side impact tests available from the NHTSA; the tests document "significant damage to the doors" and "significant side impacts where the doors became partially detached;"[74] it is common practice in the "field of accident reconstruction to utilize the testing that is available and most closely represents the impact configuration and forces involved in the case;"[75] it is common practice in accident reconstruction to "utilize NCAP crash tests that are not exactly the same as the accident crash in order to evaluate the actual crash;"[76] Northwestern University Traffic Institute devotes a portion of its accident reconstruction class to "the analysis of crush on accident vehicles and how to relate that crush to Equivalent Barrier Speed ("EBS") by comparing accident vehicle crush to the NCAP crash test;"[77] it is accepted practice in engineering and accident

---

[71] Id.

[72] Id. at 10.

[73] Id. at 11-13.

[74] Docket no. 77, exhibit E at ¶ 12.

[75] Id. at ¶ 13.

[76] Id. at ¶ 14.

[77] Id.

reconstruction "to use NCAP crash tests as a tool to analyze the accident vehicle damage;" [78] and

businesses "provide data to reconstructionists from NCAP tests to perform EBS calculations." [79] To the

extent there are dissimilarities in the testing and the accident, Dr. Benedict testified that: "the basic

engineering of both sides of the vehicle is the same" and basic engineering shows "the deformation on

two bodies that are the same in configuration and strength will deform similarly given the same force"

so comparing the testing on the driver side with the accident on the passenger side is "valid from an

engineering point of view;" [80] and photographs of the vehicles involved in the accident are "for all

intents and purposes, identical to the NCAP tests where the sliding door in every test was separated

from its connections." [81]

With respect to whether DaimlerChrysler conducted a proper FMEA, as discussed by the

Magistrate Judge, Dr. Benedict testified that although "tests clearly show the side doors coming

detached in side impact tests, and the general industry knowledge that detachments such as those

exhibited in the NHTSA tests result in occupant space intrusion with occupant injury, DaimlerChrysler

did not change the design of the side doors." [82] Dr. Benedict states that "[a] proper FMEA would have

shown DaimlerChrysler the hazard that was designed into the side of their vehicle and should have been

designed out," but was not. [83]

---

[78]  Id.

[79]  Id.

[80]  Id. at ¶ 16.

[81]  Id. at ¶ 17.

[82]  Docket no. 77, exhibit E at ¶ 20.

[83]  Id.

With respect to alternative designs, as set forth by the Magistrate Judge, Dr. Benedict testified that the suggested alternative designs for the sliding doors and locks "can be found on other vehicles manufactured at the same time or before" the Dodge Caravan at issue, and the same NHTSA testing shows the sliding doors did not become detached.[84] In addition, the same side impact tests on previous body styles of the Dodge Caravan show the sliding doors remained intact.[85] Dr. Benedict explained that as NCAP testing and "state of the art for side doors on or before the date of the manufacture of the accident vehicle clearly shows that designs alternatives already existed for side doors that did not detach during crashes," calculations and testing on his suggested alternative designs was not necessary to show improved performance.[86]

Based on a complete review of the arguments of the parties and all relevant information in the record, this Court agrees with the Magistrate Judge that defendants have established that the NCAP testing is a "reasonable and reliable basis"[87] underlying Dr. Benedict's opinion and proposed testimony that: NCAP testing showed the sliding doors and door latches on the 2004 Dodge Caravan would become detached in side impact accidents; had NCAP testing been performed on the passenger-side sliding door, the impact would have crushed the door into the right middle occupant as in the accident at issue; DaimlerChrysler failed to perform a proper FMEA on the 2004 Dodge Caravan following the NCAP testing; and economical alternative designs were available for sliding doors and latches at the time the 2004 Dodge Caravan was manufactured. In the end, as set forth in the Order, the finder of fact will determine the weight to be given to Dr. Benedict's testimony and any contrary evidence.

---

[84]   Id. at ¶ 23.

[85]   Id. at ¶ 24.

[86]   Id.

[87]   Docket no. 72 at 10.

The McClures have also challenged Dr. Benedict's qualifications "to render medical causation opinions that the alleged alternative designs would have prevented Lynne McClure's injuries.[88] As set forth by the Magistrate Judge, Dr. Benedict has testified that he has Bachelor of Science degrees in mathematics, with an engineering science minor, and mechanical engineering; a Master of Science degree in mechanical engineering; and a Ph.D. in mechanical engineering.[89] Dr. Benedict states that he is a qualified biomechanical engineer and has been accepted as such in state and federal courts. [90] In addition, Dr. Benedict testified that his area of study as a graduate student was "kinematics and dynamics of medical systems."[91] Dr. Benedict explained that "[b]iomechanics looks at a living body as a linkage (kinematics) system and applies mechanical engineering principles to determine the mechanical effects related to 'injury causation,' not the medical effects regarding the ultimate medical condition and treatment."[92] Further, "my application of biomechanics looks at and models the body as an electro-mechanical system to analyze the effects of external forces acting on the body to determine the 'mechanics of injury' by knowing what the injury is, its location within the body and the magnitude of the injury."[93] Dr. Benedict avows that he has "testified extensively as a biomechanical engineer

---

[88]  Id. at 16-18.

[89]  Docket no. 77, exhibit E at ¶ 2.

[90]  Id. at ¶ 31(a).

[91]  Id. at ¶ 31(b).

[92]  Id. at ¶ 31(c).

[93]  Id. at ¶ 31(d).

regarding injury causations and occupant kinematics,"[94] but he does not "address[] the medical issues of an injury."[95]

This Court agrees with the Magistrate Judge that Dr. Benedict's education and background show he is qualified to opine on the biomechanics of the accident at issue. As discussed in the Order, to the extent that Dr. Benedict's testimony might be construed to address medical causation and medical issues, which he is not qualified to provide, objections can be raised at the time the testimony is offered..

In sum, this Court has considered plaintiffs' objections to the Magistrate Judge's Order (docket no. 96) of October 8, 2008, and finds the Order is neither clearly erroneous nor contrary to law. Accordingly, the portion of the Order (docket no. 96) to which plaintiffs object denying in part their motion to exclude the testimony of Dr. Charles Benedict is AFFIRMED.

It is so ORDERED.

SIGNED this _____24th_____ day of March, 2009.


FRED BIERY
UNITED STATES DISTRICT JUDGE

---

[94]  Id. at ¶ 35.

[95]  Id. at ¶ 31(e).